**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD BLUMENTHAL et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 18-2143 |
| | ) | |
| U.S. NATIONAL ARCHIVES AND RECORDS ADMINISTRATION et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS......................................................................................................2

ARGUMENT.........................................................................................................................5

   I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF. ..........8

   II.   PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION. ...........................................9

      A.   Plaintiffs are Likely to Succeed on the Merits. .............................................9

          1.   Plaintiffs Are Entitled to Expedited Processing of Their Request to NARA Because the Records Sought Pertain to a Matter That Raises Questions About the Government's Integrity that Affect Public Confidence. ...........................................10

          2.   Plaintiffs Are Entitled to Prompt Processing of the Requested Records. ...................12

      B.   Plaintiffs Will Be Irreparably Harmed Absent the Requested Relief...........................14

      C.   The Requested Relief Will Not Burden Others' Interests. ...........................................19

      D.   The Public Interest Favors the Requested Relief. ........................................................20

CONCLUSION....................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACLU v. Dep't of Justice,*
  321 F. Supp. 2d 24 (D.D.C. 2004) .................................................................11

*Aguilera v. FBI,*
  941 F. Supp. 144 (D.D.C. 1996) ...................................................................18

*Al-Fayed v. C.I.A.,*
  254 F.3d 300 (D.C. Cir. 2001) ....................................................................8, 9

*Calderon v. U.S. Dep't of Ag.,*
  236 F. Supp. 3d 96 (D.D.C. 2017) ................................................................18

*Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n,*
  711 F.3d 180 (D.C. Cir. 2013) .....................................................................12

*Cleaver v. Kelley,*
  427 F. Supp. 80 (D.D.C. 1976) ....................................................................18

*Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury,*
  49 F. Supp. 2d 3 (D.D.C. 1999) ...................................................................21

*Dunlap v. Presidential Advisory Comm'n on Election Integrity,*
  286 F. Supp. 3d 96 (D.D.C. 2017) ................................................................18

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence,*
  542 F. Supp. 2d 1181 (N.D. Cal. 2008) ........................................................17

* *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice ("EPIC"),*
  416 F. Supp. 2d 30 (D.D.C. 2006) .................................................. 10, 15, 18, 20

*Jacksonville Port Auth. v. Adams,*
  556 F.2d 52 (D.C. Cir. 1977) .......................................................................20

*Judicial Watch v. U.S. Secret Service,*
  726 F.3d 208 (D.C. Cir. 2013) .....................................................................17

*Leadership Conf. on Civil Rights v. Gonzales,*
  404 F. Supp. 2d 246 (D.D.C. 2005) ..............................................................18

*Lofton v. District of Columbia,*
  7 F. Supp. 3d 117 (D.D.C. 2013) ...................................................................9

*NLRB v. Robbins Tire & Rubber Co.,*
  437 U.S. 214 (1978) ............................................................................... 16, 21

*N.Y. Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ...................................................................................18

*Oglesby v. Dep't of Army,*
   920 F.2d 57 (D.C. Cir. 1990) .......................................................................9

*Payne Enters., Inc. v. United States,*
   837 F.2d 486 (D.C. Cir. 1988) ...............................................................14, 18

*Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10-11 (D.D.C. 2014) ............19

*Serono Labs., Inc. v. Shalala,*
   158 F.3d 1313 (D.C. Cir. 1998) ...................................................................9

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
   489 U.S. 749 (1989) ...................................................................................21

*U.S. Dep't of Justice v. Tax Analysts,*
   492 U.S. 136 (1989) ...................................................................................13

*\*Wash. Post v. Dep't of Homeland Sec.,*
   459 F. Supp. 2d 61 (D.D.C. 2006) ...............................................15, 16, 17, 18, 21

## CONSTITUTIONAL PROVISIONS

U.S. Const. art II, § 2 .......................................................................................15

## STATUTES & REGULATIONS

44 U.S.C. § 2201.............................................................................................13

5 U.S.C. § 552 .....................................................................................8, 9, 10, 12, 13

36 C.F.R. § 1250.28 .............................................................................. 4, 10, 11, 12

## OTHER AUTHORITIES

Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time,
   July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/ ..............................17

David A. Graham, *How Kavanaugh's Last Confirmation Hearing Could Haunt Him*, The
   Atlantic, July 17, 2018, https://www.theatlantic.com/politics/archive/2018/07/how-
   kavanaughs-last-confirmation-hearing-could-haunt-him/565304/ ........................................ 6-7

Jennifer Rubin, *The Senate Must Prevent Kavanaugh's Nomination from Corrupting the Supreme Court*, Wash. Post, July 30, 2018, https://www.washingtonpost.com/blogs/right-turn/wp/2018/07/30/the-senate-must-prevent-kavanaughs-nomination-from-corrupting-the-supreme-court/?utm_term=.8a1e391a074f..............................................................................6

Jordain Carney, *Grassley Requests Some But Not All of Kavanaugh Papers at Bush White House*, The Hill (July 27, 2018, 6:57 PM), http://thehill.com/blogs/floor-action/senate/399296-grassley-request-some-but-not-all-of-kavanaugh-papers-at-bush-white ...................................6

Katie Benner, *Rosenstein Asks Prosecutors to Help With Kavanaugh Papers in Unusual Request*, N.Y. Times, July 11, 2018, https://www.nytimes.com/2018/07/11/us/politics/rosenstein-kavanaugh-document-review-prosecutors.html.......................................................................19

Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change The Supreme Court*, FiveThirtyEight (July 9, 2018, 9:34 PM), https://fivethirtyeight.com/features/how-brett-kavanaugh-would-change-the-supreme-court/........................................................17

Seung Min Kim, *Kavanaugh Hearing for Supreme Court Seat to Be Held in September*, Wash. Post, Aug.10, 2018, https://www.washingtonpost.com/politics/kavanaugh-hearing-for-supreme-court-seat-to-be-held-in-september/2018/08/10/f66cbea8-9cd6-11e8-b55e-5002300ef004_story.html?utm_term=.b42ea55668a0 .............................................................5

Stephen Jessee & Neil Malhotra*, The Chart That Shows the Supreme Court Will Be Out of Step With the Country*, N.Y. Times, July 12, 2018, https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html.............17

*What Are Republicans Hiding About Brett Kavanaugh*, The New Republic, July 31, 2018, https://newrepublic.com/article/150301/republicans-hiding-brett-kavanaugh.........................22

In August 2018, Plaintiffs, who are members of the Committee on the Judiciary of the United States Senate ("Judiciary Committee"), submitted Freedom of Information Act ("FOIA") requests to the National Archives and Records Administration ("NARA"), including the George W. Bush Presidential Library and Museum ("Bush Library"), and to the Central Intelligence Agency ("CIA"). These requests sought records relating to the career of Judge Brett Kavanaugh, who has been nominated to the United States Supreme Court and whose Senate confirmation hearings began on September 4, 2018 and concluded on September 7, 2018. The records Plaintiffs seek are essential for them to inform the public about Judge Kavanaugh, to engage in an exchange of information and views with those constituents regarding the nomination, and for them and their colleagues in the Senate to fulfill their constitutional "advice and consent" duties. Disclosure of these records is also critical to inform the public regarding a pivotal lifetime appointment to the nation's highest court. Plaintiffs attempted to obtain these records through traditional Senate practices and procedures, but their colleagues in the Senate majority declined to seek whole categories of documents directly relevant to Judge Kavanaugh's nomination. The resulting process has broken all norms and defied past practices, leaving Plaintiffs in the extraordinary and unprecedented position of relying on their rights under FOIA as a last resort. That is why Plaintiffs must vindicate their rights to these records—on behalf of themselves and their constituents—through this litigation.

Judge Kavanaugh brings to his nomination a lengthy career demanding thorough public scrutiny, and materials that reveal the non-public record of his activities before his appointment to the federal bench hold high value for ensuring the public is appropriately informed. His nomination has provoked extensive media interest, and the circumstances surrounding his selection and the Senate's accelerated consideration of his nomination raise questions affecting

the public's confidence in the integrity of the executive branch that appointed him, the Senate

whose majority party is racing to confirm him, and the highest court to which he could be

appointed without the robust scrutiny due nominees seeking to serve in the position. Defendants'

failures to meet their FOIA obligations threatens to deprive the Senate and the public it

represents of the information necessary to ensure that Judge Kavanaugh's potential appointment

receives rigorous, informed debate. Given these concerns and the rapidly approaching

confirmation proceedings, Plaintiffs seek to compel Defendants to comply with their obligations

under FOIA to make a determination regarding Plaintiffs' FOIA requests as required by the

statute, and to promptly produce responsive, non-exempt material. Plaintiffs also seek to compel

NARA to process their request on an expedited basis. Both the Constitution and tradition entitle

Plaintiffs to the records they seek, and where their efforts to obtain them through customary

practices have failed, these Senators now seek these records through the rights FOIA affords

them and every citizen. The issues presented in this case are not complicated political questions

but simple and straightforward applications of the FOIA statute, though the harm Plaintiffs

would suffer from being denied their rights under FOIA both encompass and transcend those of

the typical FOIA plaintiff. The Senate and the American public have a brief opportunity to sift

the record of Judge Kavanaugh's public career before the Senate is expected to make an

effectively irreversible decision that would shape the federal judiciary for decades, and the

individual Senators have a unique platform to probe and publicize Judge Kavanaugh's record.

Plaintiffs seek immediate injunctive relief to protect their vital constitutional interests and the

interests of the public they serve.

## STATEMENT OF FACTS

On August 8, 2018, Plaintiffs submitted identical FOIA requests to NARA and the Bush

Library, each seeking:

1) Records from Mr. Kavanaugh's service as a Senior Associate Counsel to the President, including all records preserved in his staff files, and those records created by Mr. Kavanaugh that can readily be found in the files of other White House staff members, the White House Counsel's Office files, other White House offices' files, and the Subject Matter Files maintained by the Staff Secretary and/or the White House Office of Records Management;

2) Records from Mr. Kavanaugh's service as Assistant to the President and Staff Secretary, including all records preserved in his staff files, and those records created by Mr. Kavanaugh that can readily be found in the files of other White House staff members, the White House Counsel's Office files, other White House offices' files, and the Subject Matter Files maintained by the Staff Secretary and/or the White House Office of Records Management;

3) Records relating to Mr. Kavanaugh's nomination to the United States Court of Appeals for the District of Columbia Circuit;

4) All electronic mail to, from, carbon copying (cc'ing), or blind carbon copying (bcc'ing) Mr. Kavanaugh in his White House tenure, including any documents attached to such emails;

5) To the extent they are not included in response to categories (1) through (4), all records containing documents written by, edited by, prepared in whole or in part by, under the supervision of, or at the direction of Mr. Kavanaugh, as well as documents referencing Mr. Kavanaugh by name, initials, or title, and documents received by or sent to him.

Compl. ¶¶ 9-10, 18-19, ECF No. 1; Ex.[1] A at 1-2; Ex. B at 1-2; Declaration of Sam Simon

("Simon Decl.") ¶¶ 6, 8, 12, 14.

Also on August 8, 2018, Plaintiffs submitted a similar FOIA request to CIA. This request

sought:

(1)     All records, including but not limited to emails, memoranda, print or other correspondence, notices, attachments, and directives addressed to, from, carbon copying (cc'ing), or blind carbon copying (bcc'ing) Mr. Kavanaugh.

---

[1] Lettered exhibits referenced herein are attached to the Complaint.

(2)     All records, including but not limited to emails, memoranda, correspondence, notices, and directives, discussing or mentioning Mr. Kavanaugh.

(3)     Records relating to Mr. Kavanaugh's nomination to the United States Court of Appeals for the District of Columbia Circuit.

(4)     To the extent they are not included in response to categories (1) through (3), all record containing documents written by, edited by, prepared in whole or part by, under the supervision of, or at the direction of Mr. Kavanaugh, as well as documents referencing Mr. Kavanaugh by name, initials, or title, and documents received by or sent to him.

Compl. ¶¶ 31-32; Ex. C at 1; Simon Decl. ¶¶ 20-21.

With regard to the request to NARA, Plaintiffs also sought expedited processing of their request, on the basis that it involves a "matter of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity." 36 C.F.R. § 1250.28(a)(4). Plaintiffs cited several points in support of their request for expedition. For example, they noted that the media "has been covering the nomination process with vigor" and observed that the media has noted concerns over certain of Judge Kavanaugh's remarks of "questionable veracity;" criticism of Judge Kavanaugh's reputation as a "highly conservative, partisan lawyer;" the role of the right-wing Federalist Society in "pre-vett[ing]" Judge Kavanaugh for this nomination; extensive support for Judge Kavanaugh from "dark money" sources; Judge Kavanaugh's various roles in the George W. Bush Administration, including his involvement in policies surrounding torture and detention; and misleading statements Judge Kavanaugh made during his D.C. Circuit confirmation proceedings regarding his service in the Bush Administration. Ex. A at 2-3.  Plaintiffs also noted that the unprecedented speed and opacity with which the White House and the Senate majority leadership are handling such a crucial nomination—which risks depriving the public and the Senate of the opportunity to

fully consider Judge Kavanaugh's records and the concerns described above—poses a threat to public confidence in the integrity of all three branches of the federal government. *Id.* at 3-4.

On August 8, 2018, NARA acknowledged receipt of Plaintiff's request by email. Simon Decl. ¶ 9 & Ex. 1. As of the date of this filing, Plaintiffs have received no further communications from NARA (apart from the Bush Library communications noted below) regarding their FOIA request. Simon Decl. ¶ 10.

On August 9, 2018, the Bush Library acknowledged receipt of Plaintiff's request, assigned it the tracking number 2018-0263-F, and granted Plaintiffs' request for expedited processing. Simon Decl. ¶ 15 & Ex.[2] 2. On September 12, 2018, the Bush Library provided a response concerning the portion of the portion of Plaintiff's request seeking records related to Judge Kavanaugh's nomination to the United States Court of Appeals for the District of Columbia Circuit. Simon Decl. ¶ 18 & Ex. 4. This response did not address the other portions of Plaintiff's request. *See id.*

By letter dated August 17, 2018, CIA acknowledged receipt of Plaintiff's request, assigned it the tracking number F-2018-02283. Simon Decl. ¶ 22 & Ex. 5.

## ARGUMENT

Judge Kavanaugh was nominated to replace Justice Anthony Kennedy on the Supreme Court of the United States on July 9, 2018, and Senate Republicans have rapidly pursued his confirmation, holding hearings beginning on September 4, 2018 and ending on September 7, 2018.[3] Plaintiffs' FOIA requests seek records concerning Judge Kavanaugh's past public service,

---

[2] Numbered exhibits referenced herein are attached to the Simon Declaration.

[3] *See, e.g.*, Seung Min Kim, *Kavanaugh Hearing for Supreme Court Seat to Be Held in September*, Wash. Post, Aug.10, 2018, https://www.washingtonpost.com/politics/kavanaugh-hearing-for-supreme-court-seat-to-be-held-in-september/2018/08/10/f66cbea8-9cd6-11e8-b55e-5002300ef004_story.html?utm_term=.b42ea55668a0.

which are highly relevant to the evaluation of his nomination, including each senator's engagement with constituents on this issues and each senator's deliberations regarding how to vote on the nomination.

Judicial opinions reflecting Judge Kavanaugh's tenure as a federal judge are readily available, but equally important records reflecting his credentials and conduct prior to his appointment to the federal bench are not. Yet Senator Grassley, the Chairman of the Judiciary Committee on which Plaintiffs serve, has declined to request Judge Kavanaugh's full record, conspicuously omitting records concerning Judge Kavanaugh's time as Staff Secretary to President George W. Bush.[4] However, as Plaintiff Senator Whitehouse has pointed out, "Judge Kavanaugh said himself his time as President Bush's Staff Secretary was 'in many ways among the most instructive' for his career as a judge."[5] Certainly, to the extent any records from this time period reflect the role played by Judge Kavanaugh—and his views and advice to President Bush—on any number of important and contentious issues, they are highly relevant to the confirmation process. Examples include any records reflecting Judge Kavanaugh's role or participation on issues such as the rights and treatment of enemy combatants, the use of torture, and indefinite detentions at a facility in Guantanamo Bay, Cuba, as well as a questionable warrantless-wiretapping program.[6]

---

[4] Jordain Carney, *Grassley Requests Some But Not All of Kavanaugh Papers at Bush White House*, The Hill (July 27, 2018, 6:57 PM), http://thehill.com/blogs/floor-action/senate/399296-grassley-request-some-but-not-all-of-kavanaugh-papers-at-bush-white.

[5] *See* Jennifer Rubin, *The Senate Must Prevent Kavanaugh's Nomination from Corrupting the Supreme Court*, Wash. Post, July 30, 2018, https://www.washingtonpost.com/blogs/right-turn/wp/2018/07/30/the-senate-must-prevent-kavanaughs-nomination-from-corrupting-the-supreme-court/?utm_term=.8a1e391a074f.

[6] Several members of the Senate have expressed concerns that Judge Kavanaugh provided misleading, or even false, answers on these topics at his confirmation hearings for his current seat on the U.S. Court of Appeals for the D.C. Circuit. *See, e.g.*, David A. Graham, *How Kavanaugh's Last Confirmation Hearing Could Haunt Him*, The Atlantic, July 17, 2018,

Given the exigency of this nomination, the widespread media interest in it, the impact that a lifetime appointee will have on American jurisprudence, and the clear questions of government integrity involved both in Judge Kavanaugh's past government service and in the Senate's and the White House's handling of his nomination, Plaintiffs have an urgent need for the records they have requested. Facing a careening confirmation process, Plaintiff Senators now ask the Court to enjoin Defendants from irreparably harming both Plaintiffs and the public interest through their failure to make a determination on the requests as required by law and the resulting wrongful withholding of records. Plaintiffs further ask the Court to enjoin NARA from irreparably harming both Plaintiffs and the public interest by wrongfully failing to process Plaintiffs' request on an expedited basis.

Plaintiffs meet the requirements for a temporary restraining order, or in the alternative, preliminary injunctive relief. Indeed, if informing the public regarding an imminent lifetime appointment to the Supreme Court and ensuring that the public is able to meaningfully participate in a vital public debate and that senators are able to execute their constitutional duty to provide informed, sound advice and consent with regard to that appointment fail to qualify for such relief, it is hard to imagine what would. Plaintiffs are likely to succeed in establishing that they are entitled to a determination regarding the records they have requested and that they are entitled to expedited processing of their request to NARA. Moreover, anything less than immediate relief requiring Defendants to process Plaintiffs' FOIA requests, make the statutorily-required determination, and promptly produce the requested records would irreparably harm Plaintiffs' ability to obtain and use the requested records to inform the public debate, engage

https://www.theatlantic.com/politics/archive/2018/07/how-kavanaughs-last-confirmation-hearing-could-haunt-him/565304/.

with their constituents, and perform their constitutional responsibilities. The requested injunction would not harm Defendants' interests or the interests of the general public; in fact, promptly processing these requests is entirely consistent with their obligations under FOIA and would bolster the public interest, both by dramatically enhancing the public's ability to evaluate a nominee for the Supreme Court; to participate in public debate in an informed manner and to convey opinions to their senators; and to empower their senators to represent them accurately in the confirmation process and by affirming the integrity of the Senate through robust and transparent vetting of a critical lifetime appointment. Because all four of the relevant factors weigh in Plaintiffs' favor, this Court should grant the requested injunctive relief compelling Defendants to process Plaintiff's requests and promptly produce non-exempt, responsive records and compelling NARA to do so on an expedited basis.

## I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute itself provides jurisdiction for this Court to consider this matter and grant all necessary injunctive relief. It states:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. . . . In such a case the court shall determine the matter de novo.

5 U.S.C. § 552(a)(4)(B). That review explicitly extends to an agency's denial or inaction on a request for expedited processing: FOIA states that "[a]gency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4)." 5 U.S.C. § 552(a)(6)(E)(iii); *see also Al-Fayed v. CIA*, 254 F.3d 300, 308 (D.C. Cir. 2001) ("a district court must review *de novo* an agency's denial of a request for expedition under FOIA"). When an agency fails to comply with the applicable time-limit provisions in the

FOIA statute, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails to comply with statutory time limits). Plaintiffs have therefore exhausted all applicable administrative remedies, and this claim is ripe for adjudication.

## II.   PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed*, 254 F.3d at 303; *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *see also Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 120 (D.D.C. 2013) ("In determining whether to issue a temporary restraining order, the Court must apply the same standard that is applied to preliminary injunctions."). Consideration of these factors here demonstrates Plaintiffs' entitlement to injunctive relief.

### A.   Plaintiffs are Likely to Succeed on the Merits.

FOIA provides clear statutory directives to agencies in responding to FOIA requests, and those requirements have been violated by Defendants in this case. Consequently, there can be little doubt that Plaintiffs will ultimately prevail in demonstrating their entitlement to expedited processing and to a timely determination on their FOIA requests and prompt disclosure of any non-exempt responsive records.

**1. Plaintiffs Are Entitled to Expedited Processing of Their Request to NARA Because the Records Sought Pertain to a Matter That Raises Questions About the Government's Integrity that Affect Public Confidence.**

There is no dispute that Plaintiffs are entitled to expedited processing of their FOIA request to NARA. Even NARA, by way of its component, the Bush Library, has admitted as much, by granting expedited processing of Plaintiffs' FOIA request to the Bush Library. *See* Simon Decl. ¶ 15 & Ex. 2.

And yet NARA has improperly failed to grant expedited processing of Plaintiffs' FOIA request. *See* Simon Decl. ¶ 10. The FOIA statute provides that "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records (I) in cases in which the [requester] demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(I)-(II). In its implementing regulations, NARA provides four reasons to grant expedited processing, including when a request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the government's integrity." 36 C.F.R. § 1250.28(a)(4). Had NARA properly reviewed and evaluated Plaintiffs' request, it would have granted expedition.

There can be little doubt that the first requirement of section 1250.28(a)(4), that the records requested relate to "[a] matter of widespread and exceptional media interest," applies in this case. From Justice Kennedy's retirement and speculation as to his replacement to Judge Kavanaugh's nomination to widespread controversy surrounding access to documents in preparation for his confirmation hearings, Judge Kavanaugh's prospects as a Supreme Court Justice have been a regular part of the daily news cycle for months. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice ("EPIC")*, 416 F. Supp. 2d 30, 34, 40-41 (D.D.C. 2006) (finding there was "great public and media attention" in the relevant matter in case where plaintiff noted that

"hundreds of local and national media organizations reported on this matter throughout the United States this morning"); *see also, e.g.*, Ex. A at 3-4. As Plaintiffs noted in their FOIA request to NARA, "[t]he media has been covering the nomination process with vigor and concern over" Judge Kavanaugh's background, participation in controversial activities during his tenure in the George W. Bush Administration, potentially false statements he has made in the past, and the circumstances of his nomination and confirmation proceedings. *Id.* at 3.

The second requirement of section 1250.28(a)(4), that the matter in question may "affect public confidence in the government's integrity," clearly applies, as well. As Plaintiffs described in their FOIA request, the media's attention to Judge Kavanaugh's nomination has focused not just on his potential appointment to the highest court in the country, an historic event in and of itself, but on significant questions surrounding his record, service, and character, as well as the considerable controversy surrounding the nature of his nomination. Ex. A at 3. For instance, the media has focused on false and misleading statements Judge Kavanaugh has made, regarding his nomination itself, and more concerningly, his role in the Bush Administration's torture and detention and warrantless-wiretapping programs. *Id.* at 3 & n.6. Another troubling subject of media reporting has been the circumstances of Judge Kavanaugh's nomination, including that he was reportedly pre-vetted by the conservative Federalist Society, and the dark money campaign to support his nomination. *Id.* at 3.

Such questions concerning a Supreme Court nominee's professional background and honesty; his possible participation in controversial government programs of questionable legality; and the reliability of his nomination process itself, surely qualify as questions that affect public confidence in the government's integrity. *Cf. ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004) (expedited processing warranted where media attention was focused on

potential civil liberties abuses implicating questions of government's integrity). Indeed, the integrity of each branch of government is implicated, from the White House where Judge Kavanaugh served, to the one that nominated him through questionable procedures, to the Senate that may vote on his confirmation without the benefit of his full record, to the Supreme Court to which he may be appointed without adequate scrutiny. *See* Ex. A at 3.

There is therefore a strong likelihood that Plaintiffs will succeed in establishing that NARA should have granted Plaintiffs' request for expedited processing under 36 C.F.R. § 1250.28(a)(4).

**2.    Plaintiffs Are Entitled to Prompt Processing of the Requested Records.**

As a clear matter of established law, Plaintiffs are entitled to the swift processing of their FOIA requests, a timely determination by the agencies on whether they will grant or deny the requests, and the prompt production of any non-exempt responsive records. FOIA clearly and unambiguously provides that federal agencies must make records "promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A); *see also* 5 U.S.C. § 552(a)(6)(A)(i). Moreover, FOIA requires that agencies disclose records to Congress that might otherwise be withheld from the public. 5 U.S.C. § 552(d).

As an initial matter, Defendants have clearly not satisfied FOIA's requirement that they comply "promptly" with Plaintiffs' requests. Once Plaintiffs submitted their FOIA requests to Defendants, Plaintiffs were entitled to a determination by each agency as to the scope of the records that would be produced within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the relevant time period the scope of the

documents it will produce and the exemptions it will claim with respect to any withheld documents."). That deadline has passed, and Defendants have yet to provide the statutorily required detail concerning when the requests will be processed, or the scope of the material to be produced. Compl. ¶¶ 17, 29-30, 36; Simon Decl. ¶¶ 10, 19, 23. Indeed, Defendants have yet to produce any responsive records to Plaintiffs, aside from the materials provided by the Bush Library to only one out of five portions of Plaintiffs' Bush Library FOIA request. Simon Decl. ¶¶ 11, 19, 24.[7]

Furthermore, the material Plaintiffs seek—agency correspondence with or about Judge Kavanaugh, records maintained by the agencies concerning Judge Kavanaugh or his appellate court nomination, and documents maintained by the agencies to which Judge Kavanaugh contributed—undoubtedly comprise materials within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made); Exs. A-C.[8] In addition, each request "reasonably described" the records sought (specifying the timeframe for the request

---

[7] The Bush Library had also notified Plaintiffs of certain documents previously posted to the Bush Library's website in response to a separate FOIA request, but provided no detail as to the scope of the records available or their responsiveness to Plaintiffs' specific FOIA requests. Simon Decl. ¶ 16 & Ex. 2.

[8] To the extent Defendants consider any records responsive to Plaintiffs' requests to be governed by the Presidential Records Act ("PRA"), 44 U.S.C. § 2201 *et seq.*, such records should nevertheless "be administered in accordance with [FOIA]" and made available to Plaintiff Senators, *see id.* §§ 2201(a), 2201(b)(2)(A), (c)(1) (presidential records are subject to FOIA five years after archivist receives them absent affirmative restrictions imposed by President); *id.* § 2205(2)(B) (restricted records "shall be made available" to Congress and its committees); *cf.* 5 U.S.C. § 552(d). At a minimum, Plaintiffs are entitled to Defendants' prompt determination on the applicability of the PRA and existence of any restrictions. *See Tax Analysts*, 492 U.S. at 142 n.3 (noting it is the agency's burden to establish "that the materials sought are not 'agency records' or have not been 'improperly' 'withheld'").

and describing categories of documents sought) and complied with all necessary procedures. *See* Exs. A-C. Plaintiffs are therefore more than likely to succeed in establishing their entitlement to a determination regarding the requested records and prompt production of any non-exempt responsive records.

Plaintiffs will ultimately prevail in demonstrating their entitlement to expedited processing, a timely determination, and prompt disclosure of any non-exempt records responsive to their FOIA requests. FOIA provides clear statutory directives to agencies in responding to FOIA requests, and Defendants have violated them. In the meantime, Plaintiffs urgently needs Defendants to fulfill their obligations. Judge Kavanaugh's confirmation hearings have concluded. A vote on his nomination is imminent. Time is of the essence.

## B.    Plaintiffs Will Be Irreparably Harmed Absent the Requested Relief.

Plaintiffs will be harmed irreparably if Defendants do not promptly process their requests, make the required determinations, and disclose any non-exempt responsive material, especially if further delays prevent disclosure of these records until after the Senate has voted on Judge Kavanaugh's nomination. Only a temporary restraining order or preliminary injunctive relief can address this urgent need and the specter of irretrievably losing Plaintiff Senators' rights under FOIA and their opportunity to marshal all information necessary to inform their constituents and the general public, as well as to fulfill their constitutional duty. As this Circuit has long held, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

Judge Kavanaugh's nomination has triggered the exigency Congress envisioned in crafting FOIA's expedition provisions. Only accelerated review by this Court can ensure that Plaintiffs' requests are properly processed, preserving the opportunity for Plaintiffs to obtain requested records while their value to Plaintiffs and to the public remains high. As this Court has

14

previously noted, "[t]o afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request." *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.D.C. 2006); *see also EPIC*, 416 F. Supp. 2d at 40-41 ("[T]he statutory right to expedition in certain cases underlined Congress' recognition of the value in hastening release of certain information. As [the plaintiff] correctly notes, the loss of that value constitutes a cognizable harm. As time is necessarily of the essence in cases like this, such harm will likely be irreparable." (internal citations and quotation marks omitted)). Failure to expedite processing of the requests will irreparably harm the ability of Plaintiff Senators—and of their colleagues—to use the requested information to inform the public and to contribute to a robust public debate—including a dialogue with their own constituents—and to conduct a conscientious review of Judge Kavanaugh's record and its implications for the future of the United States Supreme Court prior to casting a vote.

Delay in processing the request will irreparably harm the ability of Plaintiffs and the public to obtain information in time to inform the public discussion of Judge Kavanaugh's record and its implications for the future of the United States Supreme Court. Losing the ability to review Judge Kavanaugh's record and to draw upon a thorough public debate would also hamper Plaintiffs in their constitutional duty to provide advice and consent to the president in connection with appointments of Supreme Court justices.  U.S. Const. art II, § 2. The records Plaintiffs seek possess unique value while Judge Kavanaugh's nomination is pending and is a subject of widespread public debate, and that value will deteriorate when the Senate makes its decision on Judge Kavanaugh's nomination and the public debate ends.

Plaintiff Senators also have a vested interest in the vigorous give-and-take between them and their constituents. Our system of representative democracy depends upon an informed

citizenry. That principle animates FOIA. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). A healthy confirmation process requires public access to relevant information, which constituents regularly use to form opinions about nominees and convey those opinions to their senators and to inform their votes in congressional elections. Members of the public cannot reliably fulfill their role or meaningfully participate in the process without adequate information on which to base their opinions, and this deficit impairs senators' ability to represent their constituents faithfully in Washington. In light of the Senate Majority Leader's announced commitment to fast-track a decision on Judge Kavanaugh's nomination, Court intervention to ensure prompt disclosure is necessary to ensure that senators and the public have the information they need to participate in an informed discourse—now—about his legal career and qualifications for a lifetime appointment to the nation's highest court. Only such intervention will empower the Senate to discharge its constitutional responsibility in a manner that preserves public confidence and inform the public to the extent demanded by our democracy.

This case is therefore much like *Washington Post v. Department of Homeland Security*, in which the plaintiff sought visitor logs for the Vice President's office and residence, which the plaintiff asserted would "assist the public in the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration." 459 F. Supp. 2d at 65 (internal quotation marks omitted). The plaintiff explained that "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion." *Id.* Issuing its opinion in October of 2006, this Court

concluded that "[b]ecause the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Id.* at 75.[9] The same is true here, with the Senate majority rushing to confirm Judge Kavanaugh before the upcoming midterm elections in November. The nomination has attracted widespread media and public interest and general recognition that the Senate's decision on his nomination has the potential to alter the balance of the Supreme Court and the future of its jurisprudence on fundamental constitutional questions for decades.[10] The window for Plaintiff Senators to help educate the public regarding this nomination and to ensure that their own conduct with regard to it draws upon the feedback of their constituents will be open only briefly, and it is imperative that Plaintiffs receive the records they seek before that window closes. *See Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) ("Although, and perhaps because, the Court cannot predict the timing of passage of the legislation in light of the ongoing debate in the legislature and with the Administration, the Court finds that delayed disclosure of the requested materials may cause irreparable harm to a vested

---

[9] In subsequent, unrelated litigation, the D.C. Circuit held that White House visitor logs are not "agency records" for purposes of FOIA. *See Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 228-29 (D.C. Cir. 2013). However, nothing in that decision affects this Court's analysis regarding irreparable harm in *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006).

[10] *See, e.g.*, Stephen Jessee & Neil Malhotra, *The Chart That Shows the Supreme Court Will Be Out of Step With the Country*, N.Y. Times, July 12, 2018, https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html (arguing that "[i]f Judge Brett Kavanaugh joins the Supreme Court, it will mark a sharp move to the right"); Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change The Supreme Court*, FiveThirtyEight (July 9, 2018, 9:34 PM), https://fivethirtyeight.com/features/how-brett-kavanaugh-would-change-the-supreme-court/; Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time, July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/.

constitutional interest in 'the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry.'") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Indeed, by now it is almost axiomatic that "stale information is of little value." *Payne*, 837 F.2d at 494; *accord Calderon v. U.S. Dep't of Ag.*, 236 F. Supp. 3d 96, 114 (D.D.C. 2017); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate." (citing *Wash. Post*, 459 F. Supp. 2d at 75; *EPIC*, 416 F. Supp. 2d at 41)). Thus, "failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6 (1974)). That is no doubt why courts in this jurisdiction have repeatedly issued injunctive relief in FOIA cases where the requester seeks information urgently needed to inform a pending or developing situation. *See, e.g.*, *id.* at 74-75 (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *EPIC*, 416 F. Supp. 2d at 40-41 (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding urgency requirement for expedition satisfied based on "upcoming expiration of the special provisions of the Voting Rights Act in 2007"); *Aguilera v. FBI*, 941 F. Supp. 144, 151-52 (D.D.C. 1996) (finding irreparable harm where requested records related to prisoner's challenge to conviction while already serving prison sentence); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (granting preliminary injunction for records needed for upcoming criminal trial); *cf. Sai v.*

*Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10-11 (D.D.C. 2014) (finding no irreparable harm because plaintiff offered no evidence that requested records would be of "vital public interest for an upcoming congressional election or congressional or agency decision-making process requiring public input" (internal citations and quotation marks omitted)).

As in many of those cases, Plaintiff Senators' ability to enhance the public's understanding of the qualifications of the nominee to the Supreme Court, to engage in a give-and-take with their constituents regarding the nomination, and their ability to exercise their constitutional obligations based on a complete picture of the nominee's background and their constituents' wishes will be irreparably harmed if Defendants are not required to process Plaintiffs' requests promptly and disclose any non-exempt responsive records—and, in the case of NARA, to expedite that process. Plaintiffs seek judicial intervention to ensure Defendants will comply with their obligations.

### C.     The Requested Relief Will Not Burden Others' Interests.

The Senate, the public, and Defendants are aligned in their mutual strong interest in the disclosure and review of Judge Kavanaugh's record. Defendants themselves cannot claim to be harmed by an order compelling them to comply with their statutory obligations. Indeed, the government generally has already recognized that Judge Kavanaugh's nomination demands review of his lengthy record and that that review will require allocation of additional resources.[11] Where the government has already conceded the extraordinary value of these and similar records

---

[11] *See*, *e.g.*, Katie Benner, *Rosenstein Asks Prosecutors to Help With Kavanaugh Papers in Unusual Request*, N.Y. Times, July 11, 2018, https://www.nytimes.com/2018/07/11/us/politics/rosenstein-kavanaugh-document-review-prosecutors.html.

and marshalled resources for their review, Plaintiffs' request for expedited processing and production would not meaningfully increase its burden.

Nor would granting Plaintiffs relief unduly burden other FOIA requesters. The whole purpose of the addition of the expedited processing provision in 1996 was to prioritize requesters with an urgent need for information. *See EPIC*, 416 F. Supp. 2d at 36 (explaining 1996 amendment adding expedited processing requirements). Thus, Congress itself contemplated that certain requesters would go to the head of the queue upon a showing of compelling need—as Plaintiffs have done, and as the Bush Library has agreed they have done. *See* Ex. A at 2–4; Ex. B at 2–4; Decl. ¶ 15 & Ex. 2. The urgency is no less real for the records sought from NARA or from CIA.[12] Thus, an order from this Court that Defendants promptly process Plaintiffs' requests, make a determination as required by law, and provide any non-exempt responsive records on an accelerated schedule set by this Court will not harm the interests of the non-moving party or any other entity.

### D.    The Public Interest Favors the Requested Relief.

A temporary restraining order or preliminary injunction is indispensable to protect the public's essential interests in government transparency and its opportunity for informed and meaningful participation in the Senate confirmation process.

First, courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F.

---

[12] CIA's regulations do not include the basis for expedited processing on which Plaintiffs relied in their applications to other agencies, and Plaintiffs did not request expedite processing from CIA. Nonetheless, the time-sensitivity of Plaintiffs' need for these records is the same, and demands an accelerated production schedule.

Supp. 2d at 76. The very existence of the Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) ("There is public benefit in the release of information that adds to citizens' knowledge" of government activities).

But the public benefit of injunctive relief here extends far beyond the general public interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that citizens are able to participate in public debate in an informed manner, and this interest grows with the gravity of public decisions at hand. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). There are few moments of public debate with urgency equal to that surrounding selection of a new justice to serve on the nation's highest court.

Courts have recognized the importance of timely disclosure when information is relevant to elections. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74-75. The public's need is arguably stronger in advance of a Supreme Court confirmation, because the public will not have an opportunity to revisit this decision post-confirmation with the benefit of either hindsight or belated disclosures. Congress and the Executive Branch comprise myriad individuals and face regular elections that afford the public regular opportunities to affirm or disavow their actions and to shape their priorities; while each election is significant, there are natural limits on the effects of each individual election and frequent opportunities for the public to redress errors or reverse course. Not so for the third branch of government. Vacancies on the Supreme Court are

relatively rare, and lifetime appointments render the decisions on how to fill them all but irrevocable.

Although the public enjoys far less ability to influence its highest court than it wields over the political branches, the Supreme Court, and each of its justices, exerts acute influence over the day-to-day lives of the American public. As one of only nine justices on a court that has been, of late, sharply divided, Judge Kavanaugh would be in a position to have significant impact for a generation with regard to fundamental rights and equal protection of the laws and to exert substantial, even dispositive, influence on resolution of cases guiding the relationship between the branches of government and defining the limits of executive and legislative power. The public has only one opportunity to assess his fitness for this august position and to convey its views and concerns to the senators entrusted with weighing his nomination. A temporary restraining order or preliminary injunction ensuring timely processing and disclosure of records reflecting Judge Kavanaugh's record of government service maximizes the public's ability to avail itself of that opportunity.

Moreover, questions about Judge Kavanaugh's background, the process by which he was selected for nomination, and the unorthodox manner in which Senate leadership has fast-tracked confirmation proceedings and obstructed a full review of Judge Kavanaugh's record all raise substantial concerns about the integrity of all three branches of government: the Executive Branch that has advanced his nomination, the Legislative Branch that risks abdicating its responsibility in favor of political expediency, and the Supreme Court, which could be tainted by a truncated, partisan confirmation that leaves essential questions unanswered.[13] The public has a

---

[13] *See, e.g.*, *What Are Republicans Hiding About Brett Kavanaugh*, The New Republic, July 31, 2018, https://newrepublic.com/article/150301/republicans-hiding-brett-kavanaugh.

vested interest in ensuring that the Senate and the American citizenry obtain all information necessary for the confirmation process to unfold in an open, transparent, fair, and non-partisan manner that preserves public confidence and reassures the public of its government's integrity.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant a temporary restraining order, or in the alternative, a preliminary injunction, requiring Defendants to process their FOIA requests and produce all non-exempt responsive records and an index justifying the withholding of any withheld records by such date as the Court deems appropriate.


Dated: September 17, 2018

Respectfully submitted,

*/s/ Elizabeth France*
Elizabeth France
D.C. Bar No. 999851

*/s/ John E. Bies*
John E. Bies
D.C. Bar No. 483730

*/s/ Austin R. Evers*
Austin R. Evers
D.C. Bar No. 1006999

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
beth.france@americanoversight.org
john.bies@americanoversight.org
austin.evers@americanoversight.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2018, I caused a copy of the foregoing Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order Preliminary Injunction, including notice that the application was made at 12:15 PM, along with copies of the Complaint and exhibits thereto, to be hand-delivered to defendants at the following addresses:

U.S. NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
8601 Adelphi Rd.
College Park, MD 20740

U.S. CENTRAL INTELLIGENCE AGENCY
Office of General Counsel
1000 Colonial Farm Rd.
McLean, VA 22101

In addition, a courtesy copy has been delivered to:

Jessie K. Liu
U.S. Attorney for the District of Columbia
555 4th Street NW
Washington, DC 20530

Dated: September 17, 2018

*/s/ Elizabeth France*
Elizabeth France
D.C. Bar No. 999851
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
beth.france@americanoversight.org

*Counsel for Plaintiffs*