## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD BLUMENTHAL, *et al.*,

     *Plaintiffs*,

   v.

U.S. NATIONAL ARCHIVES AND
RECORDS ADMINISTRATION, *et al.*,

     *Defendants*.

Case No. 18-cv-2143 (RDM)

## JOINT STATUS REPORT

   In accordance with the Court's October 5, 2018 and October 10, 2018 Minute Orders, counsel for the parties, who have conferred, jointly notify the Court of the status of this matter, and offer (in part) their joint proposal, and (in part) their respective alternative proposals regarding further proceedings:

   1.  This action involves several Freedom of Information Act ("FOIA") requests from Plaintiffs (United States Senators Richard Blumenthal, Patrick Leahy, Sheldon Whitehouse, Mazie K. Hirono, Cory A. Booker, and Kamala D. Harris) seeking records relating to Supreme Court Justice Brett M. Kavanaugh's time working in the White House during the Administration of President George W. Bush.  Plaintiffs, along with four other U.S. Senators, submitted two identical requests to the National Archives and Records Administration ("NARA") (one addressed to NARA, one to its component the George W. Bush Presidential Library), one request to the Central Intelligence Agency ("CIA"), and two requests to the Department of Justice ("DOJ") (one to the Office of Legal Counsel ("OLC"), and one to the Criminal Division) (collectively, "Defendants").

2.      Plaintiffs filed their original complaint on September 17, 2018, ECF No. 1, along with a motion for a temporary restraining order or preliminary injunction, ECF No. 2.  The original complaint named only NARA and the CIA as defendants.

3.      On September 21, 2018, Plaintiffs amended their complaint, adding DOJ as a defendant, and raising claims with respect to two additional FOIA requests: one to OLC, and one to the Criminal Division.  ECF No. 9.  Plaintiffs also filed a motion for a temporary restraining order or preliminary injunction with respect to their claims against DOJ.  ECF No. 10.

4.      The Court held a status conference on the afternoon of September 21, 2018.  All parties expressed their preference that briefing be avoided, in favor of agreement upon a reasonable schedule for processing Plaintiffs' FOIA requests.  The Court ordered the parties to meet and confer and file a joint status report no later than September 28, 2018 at 2 p.m., which the parties did.

5.      As a result of the parties' ongoing negotiations, and as the parties jointly requested, the Court later ordered that subsequent joint status reports be filed on October 5, 2018 and on October 10, 2018.  The parties recently jointly requested (and the Court granted) a two-day extension of the deadline for this filing, which was originally scheduled to be an October 10, 2018 joint status report.

6.      As detailed in the prior status reports, in recent weeks, counsel have had multiple lengthy discussions, over phone and email, regarding the current status of Plaintiffs' requests, Plaintiffs' priorities and the specific sorts of records that Plaintiffs are most interested in, a reasonable schedule for the processing of these requests, and the course of future proceedings in this matter.

7.      On Saturday, October 6, 2018, the Senate held a final vote with respect to now-Justice Kavanaugh's nomination to be an Associate Justice of the United States Supreme Court.  Justice Kavanaugh's nomination was confirmed by the Senate, and he was sworn in shortly thereafter.

8.      On October 10, 2018, the parties reached agreement with respect to a schedule for NARA's processing of certain documents that reflect Plaintiffs' highest priorities.  The parties' agreement with respect to Plaintiffs' requests to NARA is as follows:

- On or before October 31, 2018, NARA will complete its review, processing, and publication of any Presidential Records Act release notification letters, with respect to the following subset of Brett M. Kavanaugh's email documents:

    o   The four email documents, totaling twenty pages, which are already the subject of an October 5, 2018 Presidential Records Act notification letter (No. LM 2018-152).[1]

    o   All emails to/from/cc/bcc Brett M. Kavanaugh where Manuel "Manny" Miranda is included as a sender, recipient, cc, or bcc, from August of 2003 to April of 2004.

    o   All emails to/from/cc/bcc Brett M. Kavanaugh containing the terms "Manny" or "Ledeen," from November of 2003 to February of 2004.

- After the PRA consultation process is complete, NARA will then promptly release to Plaintiffs any of these documents (or portions of these documents) that it is permitted to release under the Presidential Records Act (subject to any applicable PRA restrictions, FOIA exemptions, or constitutional privileges).

9.      Accordingly, with respect to Plaintiffs' requests to NARA, the parties jointly and respectfully request that this agreed-upon schedule be adopted by the Court.

---

[1] A copy of this letter is available online (https://www.archives.gov/files/foia/pra-notifications/pdf/bush43/rn-lpgwb-2018-152.pdf), and is also attached to this joint status report as Government's Exhibit 1.

10.     With respect to Plaintiffs' other requests (to CIA, OLC, and the Criminal Division), the parties have been unable to reach agreement.  Accordingly, the parties respectfully submit their separate proposals for further proceedings with respect to those requests.

**Defendants' Position**

11.     This FOIA case should now proceed in the normal course.  As a result of the recent Senate confirmation of Justice Kavanaugh, whatever exigency once existed with respect to the records Plaintiffs seek no longer exists.  That significant change in circumstances, which took place after the parties' most recent status report, informs the government's position on all of the contested issues in this filing.

12.     The fact that these particular FOIA plaintiffs happen to be six United States Senators has no legal significance under either FOIA or the Presidential Records Act. Nevertheless, Defendants had been treating this lawsuit as extraordinarily time-sensitive, in part out of respect for Plaintiffs' constitutional roles in the confirmation process, and the press for time created by the Senate's confirmation-proceeding schedule—an external pressure that was entirely outside of NARA's, DOJ's, and CIA's control.  But even Plaintiffs have acknowledged in filings with this Court what was always an obvious practical reality: the urgency of this lawsuit would "deteriorate" after a final Senate vote on Justice Kavanaugh's nomination.  *See, e.g.*, Pls.' Mot. for a Temporary Restraining Order, ECF No. 2, at 15 ("The records Plaintiffs seek possess unique value while Judge Kavanaugh's nomination is pending and is a subject of widespread public debate, and that value will deteriorate when the Senate makes its decision on Judge Kavanaugh's nomination and the public debate ends.").  Now that the Senate has voted and Justice Kavanaugh has been confirmed, this case no longer presents any atypical exigency or time-sensitive interest that would distinguish it from the hundreds of FOIA matters pending before these agencies and in

this district court.  Nor does Plaintiffs' status as individual United States Senators entitle them to preferential treatment under FOIA or the PRA.

13.     Plaintiffs, of course, like anyone else, are free to continue their pursuit of any statutory rights they may have under FOIA notwithstanding Justice Kavanaugh's confirmation, but this case should now proceed like any other FOIA case in this district (virtually all of which are brought by plaintiffs who, just like these Plaintiffs, believe the records they seek are of significant public import).  With Justice Kavanaugh's confirmation, (1) Plaintiffs' motions for a temporary restraining order or for a preliminary injunction should be denied (either as moot[2] or on the merits[3]), and (2) Plaintiffs' requests for further expedited treatment of their requests (and this litigation) should be rejected.

14.     Allowing this case to proceed in the normal course would also mean that it should come as no surprise that, at this very early stage, the parties have not yet reached reach firm scheduling agreements with respect to every Defendant.  The parties are making this filing well before Defendants' answer to the First Amended Complaint is due, which is typically the *first* step in FOIA litigation in this district.  Whatever the circumstances prior to Justice Kavanaugh's confirmation, there is now plainly no urgency requiring court intervention at this early stage, before even the Amended Complaint has been answered.

---

[2] *Cf.* Pl.'s Notice of Voluntary Dismissal, *Merkley v. Trump*, No. 18-cv-2226-ABJ, ECF No. 14 (D.D.C. Oct. 6, 2018) ("Plaintiff is dismissing this action because Judge Brett Kavanaugh has been confirmed by the United States Senate, and any claim under the Advice and Consent Clause of the United States Constitution has been extinguished.").

[3] *See, e.g.*, *Lambda Legal Defense & Education Fund, Inc. v. HHS*, No. 18-cv-2130-RC, ECF No. 11 (D.D.C. Oct. 4, 2018) (denying, before final confirmation vote, plaintiff's motion for a temporary restraining order or for a preliminary injunction in FOIA case seeking Kavanaugh-related records).

15.     Even setting aside these threshold problems with Plaintiffs' approach to this litigation in a post-confirmation world, their concerns ring especially hollow where, as here, Defendants have labored in good faith to move Plaintiffs' requests along in a timely manner, and have already provided detailed information and various forms of document-related relief to Plaintiffs, wherever possible, on extraordinarily expedited timelines, including in advance of the recent confirmation vote.

16.     In particular, NARA provided unusually detailed, month-by-month, search-term-by-search term breakdowns for a lengthy list of certain of Plaintiffs' "priority" search terms.[4] Using this information prepared specifically for Plaintiffs by NARA, Plaintiffs were able to release—before the confirmation vote—what they believed to be newsworthy information to the press and the general public.[5]  And when Plaintiffs, the evening of Thursday, October 4, 2018—the night before the Senate's cloture vote, and two days before the final confirmation vote—asked for immediate processing of four particular documents, NARA voluntarily honored that request, immediately reviewed the documents in question, processed them for release under both the Presidential Records Act and under FOIA, and published a PRA notification letter on NARA's

---

[4] Those search terms came from a "Priority Tiers" document that Plaintiffs provided the government.  With respect to NARA, Plaintiffs' original proposal included six "tiers" of searches, totaling approximately 90 different search terms (ignoring root expanders and wild-card characters).  As to the Criminal Division, it included three tiers of searches totaling approximately 55 different search terms.  As to OLC, it included six tiers of searches totaling approximately 74 different search terms.  Finally, as to CIA, it included three tiers of searches totaling approximately 64 different search terms.

[5] *See, e.g.*, Luppe B. Luppen, *Lawsuits point to large trove of unreleased Kavanaugh White House documents*, YAHOO.COM (Oct. 5, 2018 ("Democrats are particularly interested in indications in the National Archives' tabulations that there are a handful of undisclosed emails from Miranda to Kavanaugh at the time that the committee aide's misconduct came to light, in December 2003, which they say contain the word 'Lundell,' the surname of the obscure staffer who conspired with Miranda in the hacking scandal."), *available at* https://www.yahoo.com/news/lawsuits-point-large-trove-unreleased-kavanaugh-white-house-documents-202543065.html.

website *the very next day*.  Gov't's Ex. 1.  Although more substantial relief was not possible before the confirmation vote—primarily because of the unavoidable reality that Plaintiffs' requests called for millions of pages of White House documents that have never before been reviewed for public release—the government did everything it could, within reason and the legal requirements of the Presidential Records Act, to accommodate Plaintiffs' interest in prompt access to the documents and information they prioritized.

17.     Finally, notwithstanding the fact that the confirmation process is now over, and notwithstanding the fact that the Senate Judiciary Committee withdrew its Special Access Request to NARA earlier this week, *see infra*, ¶ 32, the parties *still* reached agreement, just days ago, with respect to an extremely expedited schedule for the processing of particular NARA records that are apparently of highest priority to Plaintiffs, with NARA committing to complete processing of those records (and publish PRA notification letters, as appropriate) by the end of *this month*.  That agreement is further evidence that the government has been working diligently and in good faith— and continues to do so even after the confirmation of Justice Kavanaugh—to get Plaintiffs the documents and information they are most interested in on a reasonable timeline, while still accounting for the government's interest in orderly and fair processing of the substantial volume of FOIA requests currently outstanding with each defendant.

18.     For the Court's benefit, the government offers the following additional detail with respect to each of Plaintiffs' requests:

<u>Request to the Department of Justice – Office of Legal Counsel</u>

19.     Recently, counsel for the government learned that a substantial portion of the records that Plaintiffs requested from OLC in this case had already been produced by OLC (and posted online, available to the general public) in another FOIA litigation matter brought by the

same counsel.  *See generally Fix the Court v. DOJ*, No. 18-cv-1620 (CKK) (D.D.C.).  As a result, the government proposed, and Plaintiffs agreed, that the set of custodians who had been identified and agreed upon between the parties as part of the *Fix the Court* litigation be excluded for purposes of this litigation, to avoid unnecessary duplication of effort.

20.     As soon as that agreement on custodians was finalized, pursuant to its normal process for compiling and review records of this sort in response to a FOIA request, OLC requested from another DOJ component (the Justice Management Division ("JMD")) the electronic records it would need to process and review in response to Plaintiffs' request.  *See* Gov't's Ex. 2, Decl. of Paul P. Colborn ("Colborn Decl.") ¶¶ 12, 22.

21.     Until JMD fulfills OLC's request for these electronic records, OLC has only a superficial understanding of the likely size and nature of the relevant document universe to be processed in response to Plaintiffs' request.  "OLC will be better able to estimate the volume of potentially responsive records and offer a proposed processing schedule once the material becomes available from JMD for review.  Based on prior experience with similar requests and communications with JMD, OLC currently estimates that this material will likely become available to OLC for review no later than November 1."  *Id.* ¶ 22.

22.     By phone and email, counsel for Defendants explained this process and communicated that estimated timeline to counsel for Plaintiffs,[6] and offered to reduce to writing (for submission to and approval by the Court) an agreement that OLC commit to working in good

---

[6] Plaintiffs assert that "Defendant advised Plaintiff that obtaining these records would take approximately two weeks."  *Infra*, ¶ 43.  Counsel for OLC recalls offering an *estimate*, more than once, that obtaining the relevant records from JMD would take "at least a few weeks" or "two or three weeks" once OLC submitted its request to JMD, which is entirely consistent with the estimate from OLC ("no later than November 1st") that is now included in a sworn declaration attached to this filing.

faith to, at a minimum, complete the initial data pull from JMD no later than November 1, 2018. Counsel for Plaintiffs expressed dissatisfaction with this timeline, insisted upon a full-dress processing schedule in this week's status report, and confirmed that the parties would therefore need to present competing proposals in this status report. Accordingly, no further negotiations with respect to OLC have taken place since the morning of Wednesday, October 10, 2018.

23.     As explained in detail in the Colborn Declaration, "OLC has been processing, and continues to process, Plaintiff's FOIA request as quickly as practicable under the circumstances, given the nature of the request and OLC's current FOIA burden." *Id.* ¶ 24. Accordingly, OLC requests that it be permitted to continue processing records in the normal course, and that the meet-and-confer process be allowed to continue.

<u>Request to the Department of Justice – Criminal Division</u>

24.     As explained in the prior status reports in this matter, the Criminal Division has completed initial searches and provided Plaintiffs with detailed information about the volumes of material requiring responsiveness review under potential prioritization plans. And the parties had been discussing whether Plaintiffs' requests might be narrowed (or priorities agreed upon) in a way that would allow for a more expeditious and efficient response to Plaintiffs' requests.

25.     Until recently, these negotiations were ongoing, and had already borne some fruit. As one example, after the Criminal Division determined that a substantial portion of its initial search hits appeared to be non-substantive news clips (*e.g.*, mentioning Justice Kavanaugh's nomination or confirmation to the D.C. Circuit), Plaintiffs expressed a willingness to exclude those documents from further searches. The government believes that the parties were—and are—close to reaching an agreement that could allow for the completion of processing of Plaintiffs' highest priority requests to the Criminal Division as early as the end of November 2018, using a universe

of document custodians that is bounded by a prior agreement that had been reached between Plaintiffs and the Criminal Division during the administrative process.[7]  Counsel for Defendants communicated that optimism to counsel for Plaintiffs earlier this week, who, in response, expressed dissatisfaction with the Criminal Division's proposed timeline (asking instead that processing of these records be completed this month rather than next month), and offered Plaintiffs' view that the parties would therefore need to present competing proposals in this status report.  Accordingly, no further negotiations with respect to the Criminal Division have taken place since the morning of Wednesday, October 10, 2018.

26.     As a general matter, the framework of the Criminal Division's offer stands, and if Plaintiffs are willing to return to the negotiating table, counsel for the government remains willing to work towards reaching an agreement that would allow prompt processing of Plaintiffs' highest-priority requests, and potential completion of that processing as early as next month.  The Criminal Division believes that the meet-and-confer process should continue.[8]

---

[7] Based on conversations between counsel, Plaintiffs apparently do not share the Criminal Division's view that such an agreement was reached during the administrative phase.  But email traffic between senior DOJ officials and Plaintiff Senator Blumenthal's staff corroborates the Criminal Division's understanding.  *See* Gov't's Ex. 3.

[8] Plaintiffs assert that the Criminal Division recently "refused to accept any further prioritization" and that the Criminal Division actually "declined" one of Plaintiffs' offers, "indicating that it would only prioritize the 500 pages of most interest to Plaintiffs if Plaintiffs would waive their statutory rights to further records covered by their request."  *Infra*, ¶ 44.  That is inaccurate.  To be sure, counsel for the government communicated that the Criminal Division would be unable to agree to Plaintiffs' requested terms *in a status report to be filed this week*, but also emphasized his honestly held belief that the parties were close to reaching some agreement, especially if Plaintiffs were willing to (1) recommit to the original agreement Senator Blumenthal's staff had *already* agreed to during the administrative phase, *see* Gov't's Ex. 3, and (2) accept that completion of processing of Plaintiffs' priority requests would likely take until some date in November, rather than be completed at the end of October.  At that point, Plaintiffs shut down any further negotiations, and informed counsel for the government that the parties would need to file a contested status report with respect to the Criminal Division.

## Request to the Central Intelligence Agency

27.     Plaintiffs did not request expedited processing in their FOIA request to the CIA. Accordingly, searches began in earnest only the week that Plaintiffs' TRO motion was filed, and preliminary searches were only completed as recently as last week, on October 5, 2018.  CIA is now actively processing the records located as part of its preliminary searches.  As is typical, CIA estimates that it will take approximately one month to sort through the materials it has segregated as a result of those initial searches.  Accordingly, it would not be prudent for CIA to propose (let alone commit to) any firm processing schedule at this time, before it has a fulsome understanding of the document universe at issue, whether supplemental searches will be necessary, whether the CIA is dealing with significant numbers of false hits, whether some portions of the material will require classification review, and so on.  In approximately one month, CIA will be able to have meaningful discussions—ideally with the Plaintiffs (at least as an initial matter), but also with the Court if necessary—about a reasonable schedule for the production of any responsive CIA records subject to FOIA.  As the Court is aware, the CIA has a significant number of other FOIA matters (in and out of litigation), and limited resources with which to process records in each of these matters, but endeavors to process all pending requests, in an orderly fashion, as expeditiously as possible.

28.     Notwithstanding these concerns, in the interest of compromise and avoiding unnecessary judicial involvement, CIA raised the possibility that the parties could reach agreement on (and submit to this Court for approval) a date certain for CIA to make its first production in this matter, no later than December of 2018.  Plaintiffs expressed dissatisfaction with this timeline, and that the parties would therefore need to present competing proposals in this status report.

Accordingly, no further negotiations with respect to CIA have taken place since the morning of Wednesday, October 10, 2018.

29.     As a general matter, the CIA's offer stands, and if Plaintiffs are willing to return to the negotiating table, counsel for the government remains willing to work towards reaching an agreement that would set a date certain for CIA's first production at some point within the next few months.  CIA believes that it should be permitted to continue processing records in the normal course, and that the meet-and-confer process should continue.

Request to the National Archives and Records Administration

30.     Finally, with respect to Plaintiffs' requests to NARA, as detailed above, the parties have already reached agreement, and ask that the Court now adopt the parties' agreed-upon schedule.

31.     One additional point warrants mention.  Earlier in this process, Plaintiffs benefited greatly from the fact that there was substantial overlap between their FOIA requests and a pending Special Access Request that had been sent to NARA by the Senate Judiciary Committee in connection with Justice Kavanaugh's nomination process.[9]  Special Access Requests to NARA from Congress (or a congressional committee) pursuant to the Presidential Records Act, *see* 44 U.S.C. § 2205(2)(C), take priority over routine FOIA processing.  Accordingly, the extraordinary resources that NARA devoted toward processing documents in response to the Senate Judiciary Committee's Special Access Request also accrued to Plaintiffs' benefit, as NARA had been processing those records for both PRA restrictions *and* FOIA exemptions simultaneously, and

---

[9] That request, reflected in a letter from Senator Grassley to the Bush Library, is available online                            (https://www.judiciary.senate.gov/imo/media/doc/2018-07-27%20Grassley%20to%20General%20Mordente%20-%20Special%20Access%20to%20Kavanaugh%20Records.pdf ), and is also attached to this filing as Government's Exhibit 4.

every document noticed for public release in response to the Senate's request would also be responsive to these particular FOIA requests.

32.     On the evening of Tuesday, October 9, 2018, however, the Senate Judiciary Committee withdrew its Special Access Request to NARA.[10]   Accordingly, NARA is in the process of gradually winding down the resources it has been dedicating to reviewing documents in response to that request.   At this early stage, NARA is not yet in a position to say how that transition back to a routine-FOIA-processing posture will affect NARA's processing of records in response to Plaintiffs' requests.   NARA is confident, however, that it can meet the parties' agreed-upon deadline for processing Plaintiffs' highest-priority requests.

*     *     *

33.     For these reasons, Defendants respectfully request that (1) the Court adopt the parties' agreed-upon schedule with respect to Plaintiffs' requests to NARA; (2) the Court order the parties to continue the meet-and-confer process; and (3) that the parties be permitted to submit another joint status report on or before November 16, 2018, at which time the parties can update the Court as to any further progress with their negotiations and in Defendants' responses to Plaintiffs' requests and, if appropriate, submit a joint proposal (or competing proposals) for a schedule for further proceedings in this matter.[11]

---

[10] That letter from Senator Grassley to Mr. Gary Stern, General Counsel of the National Archives, is available online (https://www.archives.gov/files/foia/sen.-grassley-letter-withdrawing-access-request.pdf ) and is also attached to this filing as Government's Exhibit 5.

[11] Plaintiffs' specific requests for relief (*i.e.*, requesting specific dates and pages-per-week or -month processing requirements), were communicated to counsel for the government for the first time at 3:10 p.m. on the date of this filing, and thus counsel has not had the opportunity to discuss those specific proposals with any of the defendant agencies (let alone address them here in any detail).  Nevertheless, the general concerns raised in Defendants' section of this joint status report demonstrate why Plaintiffs' requests are premature and inappropriate at this early stage, before the meet-and-confer process has been fully exhausted, and before each of the defendants has a detailed understanding of the universe of potentially responsive records.

**Plaintiffs' Position**

34.     Plaintiffs have at all times since filing this action worked to advance the compelling public interest in the records they seek while working with Defendants to chart a fair and realistic path toward resolution of this matter. Plaintiffs' proactive efforts to prioritize and narrow their requests have primed this matter for efficient and swift resolution. One defendant has been a similarly proactive and productive partner in these efforts, and progress on that request at this time continues fruitfully without intervention from this Court. In contrast, the two remaining defendants have at hand (or imminently will) records ready for review and production but inexplicably refuse to commit to proceeding with their review on a reliable schedule, or even to commencing that review on a known date. This refusal is particularly curious given that these Defendants have generally agreed that the volumes at issue are small, meaning that prompt resolution of the claims against them should be within grasp.[12] These defendants identify no barrier to commencing review immediately and proceeding at a reasonable and certain pace, and there is no reason they should not do so.[13]

---

[12] In their statement, Defendants focus instead on the number of search terms provided in Plaintiffs' initial proposal. Of course, the actual burden on the agency is driven by the volume of material that requires review, not the number of terms run in an e-discovery tool, and CIA and DOJ have represented to Plaintiffs that they believe these volumes are not large.

[13] Defendants assert that Plaintiffs' request for progress to continue in this matter through simple agreement to processing schedules is effectively a request for "further expedited treatment" which is somehow in tension with the typical approach to a FOIA case. Defendants argue that treating this case as an ordinary FOIA matter for some reason effectively requires delaying further progress until after an Answer to the Amended Complaint comes due. Defendants overlook one obvious and uncontested difference between this case and a typical FOIA case: the parties have already made significant progress defining search scopes and identifying and obtaining records for review. Indeed, CIA and Criminal Division already have records available for review, and OLC will have its records in hand shortly. The fact that these defendants are in a position to begin review on agreed-upon sets of records prior to the answer deadline distinguishes this case, and the absence of a filed answer should not preclude or delay further progress. Moreover, the requests to NARA and DOJ have been granted expedited status under FOIA and so are entitled to processing "as soon as practicable." 5 U.S.C. § 552(6)(E)(iii).

35.     Plaintiffs filed the present lawsuit against NARA and the CIA on September 17, 2018. In light of the urgency of their requests, Plaintiffs also moved for a Temporary Restraining Order or Preliminary Injunction at the same time. On September 21, 2018—at the earliest moment they could file—Plaintiffs amended their suit to include their claims against the Department of Justice ("DOJ") and moved for a Temporary Restraining Order or Preliminary Injunction with regard to those claims.

36.     At a status conference held on September 21, 2018, Plaintiffs advised the Court that their goal was to reach agreement with Defendants on production schedules appropriate for the exigency surrounding then-Judge Kavanaugh's nomination. Plaintiffs stressed that they would prefer for Defendants to focus their resources on conducting searches and commencing review and that Plaintiffs were amenable to postponing briefing on the motion for injunctive relief in favor of productive negotiations regarding the scope and timing of processing for Plaintiffs' requests. The parties agreed to work toward production schedules, and the Court ordered them to file a Joint Status report within one week.

37.     Plaintiffs have worked diligently to prioritize their requests in a manner that would streamline Defendants' review. Plaintiffs provided search parameters clarifying their highest priority search parameters to Defendants on September 21, 2018. Since that time, Plaintiffs have striven to balance the urgency of their requests with the reality that Defendants required time to identify and obtain records and to conduct searches. Plaintiffs have twice accommodated Defendants' requests for additional time to gather information needed to propose processing schedules, as reflected in Joint Status Reports filed on September 28, 2018 and on October 5, 2018. Plaintiffs agreed to additional time in good faith and on the understanding that Defendants would diligently take all steps required to gather information needed to propose

appropriate processing schedules, as Plaintiffs repeatedly requested, and would timely propose such schedules.

38.     Three weeks have elapsed since the Court held a status conference on September 21, 2018 and directed the parties to meet and confer to negotiate a path forward for Plaintiffs' requests. Despite Plaintiffs' timely and substantial prioritizations and accommodations, only NARA has proposed any concrete processing schedule for any set of records.

39.     Plaintiffs appreciate NARA's ongoing efforts to promptly provide information concerning the status of Plaintiffs' requests, to respond to Plaintiffs' inquiries with detail and haste, and to work in good faith with Plaintiffs in resolving this matter. NARA's cooperation has resulted in agreement between the parties as to prioritization of Plaintiffs' requests and a concrete schedule for processing the highest priority records, and it has instilled in Plaintiffs confidence that ongoing negotiations will be fruitful. To be clear, NARA's cooperative efforts in this matter do not absolve CIA, OLC, and the Criminal Division of their obligations to respond to Plaintiffs' FOIA requests in a reasonable manner. Indeed, NARA's conduct in this litigation serves to underscore the failure of the remaining Defendants to do the bare minimum in a FOIA case, as described in greater detail below.[14]

40.     After three weeks of delay, CIA, OLC, and the Criminal Division now seek to delay progress indefinitely by claiming that the conclusion of Justice Kavanaugh's confirmation

---

[14] Defendants, for example, claim that they "have already provided detailed information and various forms of document-related relief to Plaintiffs, wherever possible, on extraordinarily expedited timelines, including in advance of the recent confirmation vote." *Supra* ¶ 15. To be clear, it is NARA alone who has "provided detailed information and [] document-related relief to Plaintiffs." Now more than a month after they filed their Complaint and Motion, Plaintiffs still await detailed information from the remaining Defendants (in particular, from CIA), and to Plaintiffs' knowledge, NARA is the only Defendant who has taken steps toward producing documents responsive to Plaintiffs' requests.

removes all urgency from Plaintiffs' requests and relieves Defendants of their obligations to commit to a reasonable processing schedule at this time. In taking this position, these Defendants ignore the public debate still roiling over Justice Kavanaugh's elevation to the Supreme Court and seek to discard all progress the parties have made in this matter, effectively relying on their own delay to defeat Plaintiffs' request for injunctive relief. Justice Kavanaugh's confirmation process—including its truncated nature, misleading statements made by the nominee, and more—has left much of the nation troubled, significantly undermining public confidence in the Supreme Court. The records Plaintiff seeks are directly relevant to these issues and making this information available while this national debate continues—and while media interest remains high—provides a singular opportunity to address the concerns of Plaintiffs and the public. While the conclusion of the confirmation process presents a meaningful change in circumstances since the initiation of this suit, Defendants are mistaken that no urgency remains.[15] Plaintiffs are prepared to agree to processing schedules that account for the changed circumstances while also recognizing the ongoing and urgent public need for the records they seek.

41.    Moreover, CIA, OLC, and the Criminal Division are well positioned after the parties' conferrals over the last three weeks to commence processing immediately and begin rolling productions shortly. All of the Defendants either have records available for review

---

[15] Defendants are correct that Plaintiffs acknowledged in seeking injunctive relief that the "value [of the information in the records] will deteriorate when the Senate makes its decision on Judge Kavanaugh's nomination *and the public debate ends*." Pls.' Mot. for a Temporary Restraining Order, ECF No. 2, at 15  (emphasis added). Plaintiffs do not contest that the conclusion of the confirmation process affects the urgency of the requests and the specific pace at which Defendants' review of the records they have identified should proceed. However, Plaintiffs never asserted, nor do they agree, that all urgency hinged on a pending nomination. Urgency arose also from an intense public debate on a question of monumental public importance and affecting public confidence in the integrity of all three branches of the federal government. That debate continues and has, in fact, expanded to encompass a disturbing breadth and depth of public concerns about the integrity and legitimacy of the Supreme Court and the confirmation process in the Senate.

beginning immediately or have submitted searches and expect to have records available for review soon. NARA has agreed to an initial processing schedule for Plaintiff's highest priority records, and the parties are optimistic that they will be able to work together to refine searches and agree to a processing schedule for further tiers of high-priority records.  In sharp contrast, CIA, OLC, and the Criminal Division refuse to commit to any concrete timeline for processing the potentially responsive records they have already identified, even though none believe that the volume of material requiring review is high, and agreement on a reasonable processing timeline now is likely to lead to swift resolution of this matter. The specific status of discussions with regard to each of these requests follow.

42.     **CIA:** Plaintiffs understand that CIA has completed its preliminary searches, and Plaintiffs are not aware of any reason that CIA cannot begin review of this material at this time and produce an initial set of non-exempt, responsive records (or portions thereof) within one month, followed by monthly rolling productions. Yet CIA has refused to make any commitments regarding when it will begin reviewing potentially responsive records, the rate at which it will process records, or when it will make an initial production. CIA has only been willing to agree to an "aspirational" initial production at the end of 2018—nearly four months after commencement of this lawsuit. Plaintiffs are not asking for CIA to commit to a date to complete its productions, and CIA has not provided any reason why, having completed its initial searches, it cannot commit to a schedule for promptly processing the results and producing records.

43.     **OLC:** Plaintiffs have consented to remove certain custodians from the scope of OLC's searches and understand that OLC has now requested the remaining records from the

Department of Justice's Justice Management Division ("JMD"). [16] On October 4, 2018,

Defendant advised Plaintiff that obtaining these records would take approximately two weeks.

On October 10, 2018, OLC revised this estimate to state that it might not have the records until

the end of October and that it would not commit to a processing schedule until it had received the

records. [17]   Again, given that Plaintiffs are not requesting a commitment for a date to complete

production but only for an initial production and processing rate, OLC has provided no credible

reason that the parties cannot agree to a schedule now, with review to commence promptly upon

OLC's receipt of requested records from JMD.

44.     **Criminal Division:** Defendants' statement mischaracterizes the discussions

between the Criminal Division and Plaintiffs in their efforts to prioritize records for review, in

that it omits the critical fact that Criminal Division refused to accept any further prioritization

from Plaintiffs and demanded substantial narrowing of an already small universe of potentially

responsive records in exchange for any certainty regarding a production schedule. Plaintiffs

understand that the Criminal Division has completed searches based first on priorities

---

[16] On October 2, 2018, Plaintiffs agreed to exclude a set of custodians who had been identified and agreed upon in separate litigation (initiated by Plaintiff Fix the Court) for purposes of the present litigation, as Defendants note. *See supra* ¶ 19. Defendants also note that Plaintiffs' counsel also represent Fix the Court. As an initial matter, the overlap in counsel is irrelevant to OLC's processing schedule in this matter. Moreover, instead of agreeing to exclude the overlapping custodians altogether, Plaintiffs could have asked that OLC simply reproduce any documents produced in the *Fix the Court* litigation. Either way, the overlap has resulted in no additional burden to OLC.

[17] Notably, in contrast to the circumstances here, in the *Fix the Court* litigation, OLC apparently had no trouble obtaining the documents in question within two weeks of the Complaint being filed (and indeed within just one week of Plaintiff filing a Motion for Preliminary Injunction). In that matter, Plaintiff's complaint was filed on July 10, 2017, its motion for injunctive relief was filed on July 16, 2018.   By July 24, 2018, OLC reported to the Court the number of potentially responsive documents that had been identified, and proposed a processing rate of 400 documents per week, with an initial production to be made no later than August 3, 2018. *See* Joint Status Report, *Fix the Court v. U.S. Dep't of Justice*, No. 18-cv-1620 (CKK), ECF No. 14 (July 24, 2018 D.D.C.).

communicated by Plaintiffs prior to this litigation and based on further priorities communicated via counsel on September 21, 2018. Plaintiffs requested that Criminal Division focus first on a subset of high-priority records reflecting both sets of prioritization parameters, which Plaintiffs understand to consist of approximately 500 pages, and then proceed to process the remaining pages identified based on the pre-litigation communications (a set of records which Plaintiffs understand to be on the order of 2000 pages).[18]  The Criminal Division declined this request, indicating that it would only prioritize the 500 pages of most interest to Plaintiffs if Plaintiffs would waive their statutory rights to further records covered by their request. Although Plaintiffs were not inclined to waive their entitlements under FOIA, they indicated by email on October 4, 2018 that they would consider narrowing their request to the approximately 500 highest priority pages—substantially reducing the burden on the Criminal Division by cutting the volume for review to between one-quarter and one-half of the initial results—if the Criminal Division would in exchange commit to produce this small set of records by the end of October (approximately one month from the date Plaintiff's made this proposal). The Criminal Division declined this offer via counsel on a phone call held October 10, 2018, electing instead to review the full larger set of records, and has so far declined to propose any processing schedule or dates for initial or rolling productions for results of its completed searches.

45.     Finally, Plaintiffs have been clear from the beginning of this litigation that they sought workable production schedules appropriate to the urgency of public debate surrounding then-Judge Kavanaugh. Plaintiffs have repeatedly sought processing schedules from Defendants

---

[18] Defendant also asked Plaintiffs on October 4, 2018 to exclude newsletters, news clips, and similar records from their review, and Plaintiff agreed that day to do so to the extent that such records were not forwarded adding substantive content. Plaintiffs understand from discussion with Defendant that this agreement cut the volume of the highest priority record set in half.

through phone calls and emails, and Plaintiffs have agreed in good faith to Defendants' requests

for additional time to gather information purportedly necessary to propose such schedules. As

recently as October 4, 2018, Plaintiffs accommodated a request from Defendants to file a Joint

Status Report requesting more time for the parties to meet and confer, and Plaintiffs made clear

that this accommodation was contingent on the expectation that the parties would submit a Joint

Status Report on October 10, 2018 setting forth the processing schedule Plaintiffs had expected

to submit in the parties' September 28, 2018 Joint Status Report. In good faith, Plaintiffs

provided by email on the evening of October 4, 2018 all information they had agreed to provide

during a telephonic conference earlier that day, including an agreement to exclude certain

records from the Criminal Division's review. That email also reiterated Plaintiffs' expectation, as

expressed on the phone call earlier in the day and on other occasions, that the next Joint Status

Report would memorialize a specific processing schedule for each request and agency. At that

time, all parties were aware that a vote on then-Judge Kavanaugh's confirmation was likely to

occur over the weekend.  Yet, while Defendants indicated that that vote could impact the speed

at which records would be processed, at no time did they signal it would affect their willingness

to agree to a reasonable processing schedule and a timeframe for initial productions. Plaintiffs

accommodated Defendants' request for additional time in good faith and would not have done so

had they known that Defendants would again decline to propose or commit to processing

schedules and would in fact point to the vote as relieving them of any duty to do so.

     46.    For all the reasons stated above, allowing Defendants to continue to defer

agreement to a processing schedule would unduly penalize Plaintiffs for their good faith efforts

to resolve this matter without further Court intervention. It would also reward Defendants for

delay. At this time, Defendants have provided no plausible reason that review of the records they

have already identified and obtained (or will imminently obtain) cannot begin immediately and proceed at a reasonable rate. Defendants are wrong to suggest that the confirmation vote has stripped Plaintiffs' requests of all urgency. But even if they were correct, Plaintiffs seek nothing more than basic relief common in the most routine FOIA case: a concrete and efficient schedule for processing a relatively small universe of identified records that may be responsive to a handful of FOIA requests. Defendants offer no credible reason that they cannot commit to such a schedule or begin review now.[19]

47.     Plaintiffs therefore respectfully request that the Court order the following schedule:

- NARA will process the top-priority records agreed upon by the parties and issue any required Presidential Records Act notices regarding those records by October 31, 2018.

- NARA and Plaintiffs will continue to meet and confer regarding a scope and schedule for further processing and production.

- CIA and Criminal Division will immediately begin reviewing records potentially responsive to Plaintiffs' requests. CIA and Criminal Division will process at least 750 pages of potentially responsive material per month until review is complete.

---

[19] The handful of complications Defendants do point to, such as the possibility of false hits, can be addressed through the meet-and-confer process, in which Plaintiffs are amenable to working with Defendants to make processing more efficient. But the possibility that review will be able to proceed faster than the agencies anticipate today is no impediment to establishing a minimum processing rate at this time. Similarly, if supplemental searches are necessary, there is no barrier to proceeding with review of those records at the same pace at the conclusion of this phase of review or to negotiating an appropriate date for commencing review of those records if additional time is required to complete those supplemental searches.

- OLC will begin reviewing records potentially responsive to Plaintiffs' requests immediately upon receipt of records from JMD and will process at least 175 pages per week between that date and November 9, 2018 and 750 pages per month thereafter.

- CIA, OLC, and Criminal Division will each make an initial production of responsive, non-exempt material not later than November 9, 2018.

- The parties will report on their progress in a Joint Status Report not later than November 15, 2018.

48.     Plaintiffs are available for a status conference the week of October 15, 2018, should the Court believe one would be useful.

Dated: October 12, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/   *Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: stephen.pezzi@usdoj.gov

*Attorneys for Defendants*

*/s/ Elizabeth France*
Elizabeth France, D.C. Bar #999851
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
beth.france@americanoversight.org

*Counsel for Plaintiff*