# Government's Exhibit 1



NATIONAL
ARCHIVES

**VIA EMAIL**
(LM 2018-152)

October 5, 2018

The Honorable Donald F. McGahn, II
Counsel to the President
The White House
Washington, D.C.  20502

Dear Mr. McGahn:

In accordance with the requirements of the Presidential Records Act (PRA), as amended, 44 U.S.C. §§2201-2209, this letter constitutes a formal notice from the National Archives and Records Administration (NARA) to the incumbent President of our intent to open George W. Bush Presidential records.  These records were processed in response to the *Blumenthal v. NARA* FOIA litigation.

This material, consisting of four assets totaling 20 pages, has been reviewed for the six PRA Presidential restrictive categories, including confidential communications requesting or submitting advice (P5) and material related to appointments to federal office (P2), as they were eased by President George W. Bush on November 15, 2010.  These records were also reviewed for all applicable FOIA exemptions.  As a result of this review, four assets have been restricted in part.  Therefore, NARA is proposing to open those portions of the four assets that do not require closure under 44 U.S.C. § 2204.  A copy of any records proposed for release under this notice will be provided to you.

We are also concurrently informing former President George W. Bush's representative, William A. Burck, of our intent to release these records.  Pursuant to 44 U.S.C. 2208(a), NARA will release the records 60 working days from the date of this letter, which is November 29, 2018, unless the former or incumbent President requests a one-time extension of an additional 30 working days or asserts a constitutionally based privilege, in accordance with 44 U.S.C. 2208(b)-(d).  Please let us know if you are able to complete your review before the expiration of the 60 working day period.  Pursuant to 44 U.S.C. 2208(a)(1)(B), we will make this notice available to the public on the NARA website.

If you have any questions relating to this notification, please contact me at (202) 357-5144 or NARA General Counsel Gary M. Stern at (301) 837-3026.

Sincerely,

B. JOHN LASTER
DIRECTOR
Presidential Materials Division



**NATIONAL
ARCHIVES**

**VIA EMAIL**
(LM 2018-152)

October 5, 2018

William Burck
1300 I Street NW
Suite 900
Washington, D.C. 20005

Dear Mr. Burck:

In accordance with the requirements of the Presidential Records Act (PRA), as amended, 44 U.S.C. §§2201-2209, this letter constitutes a formal notice from the National Archives and Records Administration (NARA) to you, as former President George W. Bush's representative, of our intent to open George W. Bush Presidential records. These records were processed in response to the *Blumenthal v. NARA* FOIA litigation.

These records, consisting of four email assets totaling 20 pages, have been reviewed for the six PRA Presidential restrictive categories, including confidential communications requesting or submitting advice (P5) and material related to appointments to federal office (P2), as they were eased by President George W. Bush on November 15, 2010. These pages were also reviewed for all applicable FOIA exemptions. As a result of this review, NARA has restricted four assets in part. NARA is proposing to open the remaining portions of those four assets that do not require closure under 44 U.S.C. § 2204. A copy of the records proposed for release under this notice will be made available to you.

We are also concurrently informing the incumbent President of our intent to release these George W. Bush Presidential records. Pursuant to 44 U.S.C. 2208(a), NARA will release the records 60 working days from the date of this letter, which is November 29, 2018, unless the former or incumbent President requests a one-time extension of an additional 30 working days or asserts a constitutionally based privilege, in accordance with 44 U.S.C. 2208(b)-(d). Please let us know if you are able to complete your review before the expiration of the 60 working day period. Pursuant to 44 U.S.C. 2208(a)(1)(B), we will make this notice available to the public on the NARA website.

If you have any questions relating to this notification, please contact me at (202) 357-5144 or NARA General Counsel, Gary M. Stern, at (301) 837-3026.

Sincerely,

B. JOHN LASTER
DIRECTOR
Presidential Materials Division

Government's

Exhibit 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD BLUMENTHAL, *et al.*,

*Plaintiffs,*

v.

U.S. NATIONAL ARCHIVES AND
RECORDS ADMINISTRATION, *et al.*,

*Defendants.*

Case No. 18-cv-2143 (RDM)

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1.      I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department") and a career member of the Senior Executive Service. I joined OLC in 1986, and since 1987 I have had the responsibility, among other things, of supervising OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I submit this declaration in support of the Government's proposal for further proceedings in this matter. The statements that follow are based on my personal knowledge, as well as on information provided to me by OLC staff working under my direction.

2.      This declaration explains the basis for OLC's conclusion that setting a detailed and aggressive processing or production schedule at this early stage of this litigation would be burdensome, impracticable, and not feasible to adhere to without compromising OLC's ability to meet existing deadlines in other FOIA cases and directly disadvantaging other FOIA requesters, as well as OLC's ability to perform its duties as legal adviser to the President and the Executive Branch. For the reasons set forth below, OLC simply does not currently maintain the resources to further expedite processing of Plaintiffs' FOIA request without adversely impacting these

other obligations, including other FOIA requests that have been granted expedited processing or are in litigation.

## OLC RECEIPT OF PLAINTIFFS' FOIA REQUESTS

3.     By letter dated August 8, 2018 and received by OLC the same day, Plaintiffs and others submitted a FOIA request to OLC seeking four categories of records "involving Brett Kavanaugh during his time as an associate in the White House Counsel's office from January 2001 to July 2003 and as White House Staff Secretary from July 2003 to May 2006." Plaintiffs also requested expedited processing for the request under two standards pursuant to Department regulations: 28 C.F.R. § 16.5(e)(1)(ii), (iv). A copy of Plaintiff's FOIA request ("FOIA Request") is attached hereto as Exhibit A.

4.     By letter dated August 17, 2018 and transmitted by email the same day, the Director of the Department's Office of Information Policy ("OIP") acknowledged receipt of the FOIA request on behalf of OLC and the other Department components that had received it, and informed Plaintiffs that it had been assigned OLC tracking number FY18-178. She further informed Plaintiffs that the request for expedited processing had been granted. A copy of OIP's acknowledgment letter is attached hereto as Exhibit B.

5.     Through negotiations with counsel, Plaintiffs narrowed their request with respect to OLC by excluding a number of custodians for whom a similar request had already been processed.

## OLC'S LEGAL ADVICE ROLE AND ITS PROCESSING OF FOIA REQUESTS

6.     The principal function of OLC is to assist the Attorney General in his role as legal adviser to the President of the United States and to the departments and agencies of the Executive Branch. OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch.

7.     OLC is a very small component of the Department of Justice, employing approximately 18 to 25 attorneys at any one time, although staffing levels have varied as a result of vacancies and fiscal circumstances. The Office currently has 13 line attorneys (Attorney-

Advisers), as well as three more senior attorneys with the title of Senior Counsel or Special Counsel, four Deputy Assistant Attorneys General and an Assistant Attorney General. OLC also employs one attorney at the line attorney level having the title FOIA and Records Management Attorney (the "FOIA Attorney"). OLC also employs four paralegals, with one having the title of Supervisory Paralegal and one having the title of Lead Paralegal.

8.      With the exception of the FOIA Attorney, the primary responsibility of the Office's attorneys, including its Attorney-Advisers, is to assist in the preparation of the Office's legal advice to the President, the Attorney General, and the agencies and departments of the Executive Branch. The work of processing and responding to FOIA requests directed or referred to OLC, as well as the work of coordinating OLC's FOIA litigation matters with the Department's litigating components, is carried out by the FOIA Attorney, under my supervision and with the assistance of OLC's paralegals. The paralegals likewise have a number of other important duties, including research and cite-checking assistance in connection with the Office's legal advice; processing the Department's interactions with the Federal Register; maintaining records relating to Attorney General orders and Department regulations; and assisting with litigation or congressional oversight in connection with which the Office is playing a role, including FOIA litigation.

9.      Over the five-year period covering Fiscal Years 2012 to 2016, OLC received an average of approximately 106 requests per fiscal year. Despite the limited resources available to OLC for processing FOIA requests, over that time period OLC processed the substantial majority of requests received, reduced a significant outstanding FOIA processing backlog, and maintained a relatively small backlog. In Fiscal Year 2012 (October 1, 2011 – September 30, 2012), OLC received 130 FOIA requests and had a year-end backlog of 23 requests. In FY2013, OLC received 86 FOIA requests and had a year-end backlog of 34 requests. In FY2014, OLC received 91 FOIA requests and had a year-end backlog of 35 requests. In FY2015, OLC received 111 FOIA requests and had a year-end backlog of 49 requests. In FY2016, OLC

3

received 111 FOIA requests and had a year-end backlog of 60 requests.  In total over the course

of those five years, OLC received 529 FOIA requests and processed 503 FOIA requests.

10.     In contrast, in FY2017 (October 1, 2016 – September 30, 2017), OLC received

284 FOIA requests.  This represented more than two and a half times the average number of

requests received per year over the previous five years, imposing a considerable additional

burden on OLC's ability to meet its FOIA obligations.  This increased burden continued during

the following fiscal year.  In the just-completed FY2018 (October 1, 2017 – September 30,

2018), OLC received 209 new FOIA requests.

## EXPEDITED PROCESSING

11.     In processing FOIA requests, OLC acts pursuant to the Department's FOIA

regulations, which state that "[c]omponents ordinarily will respond to requests according to their

order of receipt."  28 C.F.R. § 16.5(a).  OLC uses multitrack processing, as permitted by 28

C.F.R. § 16.5(b), and assigns requests to the expedited, simple, or complex processing tracks.

OLC's general practice is to begin search and processing within each track according to the

requests' order of receipt.  Typically, an initial search is conducted by searching OLC's internal

database of final legal advice and/or by inquiring with OLC's attorneys to determine whether

responsive records are likely to exist.  Subsequent searching, including the identification of

custodians and development of keywords for electronic searches, is then carried out as needed

based on the results of that initial search.  These subsequent searches are prioritized by

processing track, date of receipt, and available resources.

12.     When subsequent searching of multiple custodians' emails and/or electronic files

is required, that process is initiated by submitting a data request to an eDiscovery group in the

Department's Justice Management Division ("JMD") that has access to the data.  That group

serves other Department components besides OLC and maintains its own queue of data requests.

Accordingly, OLC does not have full control over searching its users' emails.

13.     Because some requests are by their nature less complicated than others—

including because records responsive to some requests may be easier to locate and identify,

easier to process, or require less intra- or inter-agency consultation—the processing of requests may be completed out of order, notwithstanding the order of their assignment for processing. For example, although the expedited track is not further subdivided by complexity, the nature of this process is such that a simple or narrowly-targeted expedited request can often be closed fairly quickly if the initial search identifies few or no potentially responsive records.

14.     In the absence of a court order establishing deadlines that require a later-received request to be processed out of order ahead of earlier-received requests, OLC's policy is to process FOIA requests in order according to Department regulations—that is, in the order of receipt within their respective queue—even where a request is the subject of litigation.  We should not unfairly favor more-litigious requesters over other members of the public who have made FOIA requests but lack the interest, resources, or expertise to engage in litigation regarding OLC's response to their FOIA request.  This policy is intended to ensure that OLC's limited resources for FOIA processing are allocated and prioritized in a manner that is fair to all FOIA requesters.

15.     When OLC received Plaintiffs' FOIA request on August 8, 2018, OLC had 323 pending FOIA requests, including 53 in the expedited processing queue.

16.     OLC has since been able to close some of these other pending requests. Accordingly, there are currently 294 earlier-received requests in OLC's queue, 47 of which are in the expedited queue.

17.     Many of these earlier-received FOIA requests are no less complicated than Plaintiffs' request and seek records on issues that are similarly high-profile.  For example, FY13-056 seeks records "regarding all programs of warrantless mass or dragnet surveillance that operate by impact and effect to collect information and date on United States Persons"; FY14-042 seeks multiple categories of records "concerning the policies and procedures governing the acquisition, retention, dissemination, and use of information gathered as part of various government surveillance programs"; FY14-088 seeks any records "that helped provide the legal basis for the Obama administration's determination that the 2001 Authorization for Use of

Military Force against al Qaida and the Taliban and the 2002 AUMF against Iraq now allow the U.S. military to conduct air strikes, drone missile attacks and other military actions against Islamic State (aka the Islamic State of Iraq and the Levant) forces in both Iraq and Syria." Several expedited requests seek records relating to the various Executive Orders titled "Protecting the Nation from Foreign Terrorist Entry into the United States."

18.     The average processing time for complex requests closed by OLC in FY2016 was approximately 210 business days, or 10.5 months, and the average processing time for complex requests closed in FY2017 was approximately 155 business days, or nearly eight months.  Since OLC has not yet finalized its annual report submission for FY2018, the most up-to-date numbers are not yet available.

## OLC'S FOIA LITIGATION DOCKET

19.     In addition to a substantial FOIA-request processing workload, OLC has increasingly become the subject of FOIA litigation, as requesters turn to the courts more often and more quickly than in prior years.

20.     Including this case, there are more than 40 active lawsuits seeking OLC records in which OLC is currently a named defendant or one of the relevant DOJ components in a suit in which the Justice Department is a named defendant.  Of these cases, more than 25 were—like this one—filed in calendar year 2017 or 2018 and seek responses to requests that were received in the same calendar year.  These attempts to bypass the ordinary FOIA processing queue by seeking court-ordered production deadlines far in advance of the ordinary course do significant damage to OLC's ability to complete its FOIA processing in a fair and orderly manner.  Every time OLC must allocate its sparse FOIA resources to defending these cases or attempting to meet a court-ordered production deadline, the result is further delay suffered by all other requesters.

## OLC'S PROCESSING OF PLAINTIFFS' FOIA REQUEST

21.     OLC has been working diligently to respond to Plaintiffs' FOIA request as soon as practicable.

22.     OLC has already processed 1,723 pages of records in response to another FOIA request seeking communications with Brett Kavanaugh over the same time period.  We have provided counsel for Plaintiffs (who also represent the plaintiff in the other matter) with the responses to that request, including 844 pages released in full or in part, all of which have been posted online and made available to the general public.  *See generally Fix the Court v. DOJ*, No. 18-cv-1620 (CKK) (D.D.C.).  For Plaintiffs' requests in this matter, immediately after litigation counsel reached an agreement with respect to the OLC document custodians whose records need to be searched, OLC submitted its data request to the eDiscovery group at JMD.  OLC will be better able to estimate the volume of potentially responsive records and offer a proposed processing schedule once the material becomes available from JMD for review.  Based on prior experience with similar requests and communications with JMD, OLC currently estimates that this material will likely become available to OLC for review no later than November 1st.

23.     The nature of this request, along with OLC's review of the responsive records already processed as part of the related request filed by the same counsel in the *Fix the Court* litigation,  make it clear that the vast majority of responsive records in this case are likely to contain material exempt from mandatory disclosure under the FOIA, particularly under Exemption Five, 5 U.S.C. §552(b)(5).  This includes material that is subject to the attorney-client, deliberative process, and presidential communication privileges, as well as the attorney work product doctrine.  These records will require close inspection to avoid inadvertently releasing exempt material, and will also require consultations with other government entities with equities in the documents, consultations that will include whether to make discretionary releases of exempt material.  It is not possible for OLC to make release determinations on behalf of these other entities, and consultation is required before any release determination may be made, pursuant to practice and regulation.  *See* 28 U.S.C. § 16.4(d).

24.     OLC has been processing, and continues to process, Plaintiffs' FOIA request as quickly as practicable under the circumstances, given the nature of the request and OLC's current FOIA burden.  For the reasons discussed above, it would be unduly burdensome,

impracticable, and infeasible to further expedite the processing of Plaintiff's FOIA request, or to establish a more-detailed processing schedule at this time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: October *12*, 2018, Washington, D.C.

*Paul P. Colborn*

_____

PAUL P. COLBORN

8

# Exhibit A

| | |
|---|---|
| **From:** | Simon, Sam (Judiciary-Dem) |
| **To:** | USDOJ-Office of Legal Counsel (SMO) |
| **Subject:** | FOIA Request for Records on Brett Kavanaugh |
| **Date:** | Wednesday, August 08, 2018 4:32:43 PM |
| **Attachments:** | FOIA Request for Kavanaugh Records - DOJ OLC.pdf |

**Request 18-178, Rec'd 8/8/18**

Melissa Golden

Lead Paralegal and FOIA Specialist

Office of Legal Counsel

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Room 5511

Washington, D.C.  20530-0001

*Submitted via email*

April 8, 2018

Dear Ms. Golden,

The attached document constitutes the official record of a Freedom of Information Act request submitted on behalf of Senators Blumenthal, Feinstein, Leahy, Durbin, Whitehouse, Klobuchar, Coons, Hirono, Booker, and Harris.

As detailed in the attachment, I ask that any fees associated with the request be waived. In addition, I ask that the request be expedited.

I would prefer to receive this information electronically via email at Sam_Simon@judiciary-dem.senate.gov. If that is not possible, please send all records to:

Richard Blumenthal

706 Hart Senate Office Building

Washington, D.C.  20510

If possible, please reply to this email to confirm receipt for my records. Further, please feel free to contact me at 202-224-2823 should you have any questions or need additional information from me.

Thank you for your attention to this request.

Sincerely,

Sam

Sam Simon

Chief Counsel

Senator Richard Blumenthal, Ranking Member

Subcommittee on Oversight, Agency Action, Federal Rights, and Federal Courts
Senate Judiciary Committee

# United States Senate

WASHINGTON, DC 20510

August 8, 2018

Ms. Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Room 5511
Washington, D.C.  20530-0001

Dear Ms. Golden,

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Department of Justice's FOIA regulations, 28 C.F.R. §§ 16 et seq., we hereby request that you produce the following records involving Brett Kavanaugh during his time as an associate in the White House Counsel's office from January 2001 to July 2003 and as White House Staff Secretary from July 2003 to May 2006.

## Requested Records

We request that the Office of Legal Counsel produce the following records:

1. All records, including but not limited to emails, memoranda, print or other correspondence, notices, attachments, and directives addressed to, from, carbon copying (cc'ing), or blind carbon copying (bcc'ing) Mr. Kavanaugh.
2. All records, including but not limited to emails, memoranda, correspondence, notices, and directives, discussing or mentioning Mr. Kavanaugh.
3. Records relating to Mr. Kavanaugh's nomination to the United States Court of Appeals for the District of Columbia Circuit.
4. To the extent they are not included in response to categories (1) through (3), all records containing documents written by, edited by, prepared in whole or part by, under the supervision of, or at the direction of Mr. Kavanaugh, as well as documents referencing Mr. Kavanaugh by name, initials, or title, and documents received by or sent to him.

FOIA requires that agencies disclose records to Congress that it may otherwise legitimately withhold from the public. 5 U.S.C. § 552(d). As the D.C. Circuit has explained, "all Members have a constitutionally recognized status entitling them to share in general congressional powers and responsibilities, many of them requiring access to executive information," and therefore "it would be an inappropriate intrusion into the legislative sphere" for the court to decide that only Congress acting as a whole or only a committee or chairman

"shall be regarded as the official voice of Congress." *Murphy v. Department of Army*, 613 F.2d 1151, 1157 (D.C. Cir. 1979). Indeed, the court in that case emphasized that each member of Congress "participates in the law-making process; each has a voice and a vote in that process; and each is entitled to request such information from the executive agencies as will enable him to carry out the responsibilities of a legislator." *Id.*

In order to fulfill our constitutional duty to advise the President on the nomination of Mr. Kavanaugh as members of the United States Senate, we need access to the records requested herein. Therefore, we expect that any withholdings that your agency might apply to an ordinary request will be waived when disclosing records in response to our request, pursuant to 5 U.S.C. § 552(d).

If it is your position that any of the requested documents are exempted from disclosure requirements, we request that you provide a *Vaughn* index as required by *Vaughn v. Rosen*, 484 F. 2d 820 (D.C. Cir. 1973); *see also Roth v. U.S. Dept. of Justice*, 642 F. 3d 1161, 1185 (D.C. Cir. 2011) ("Under our case law, agencies invoking a FOIA exemption must provide a specific, detailed explanation of why the exemption applies to the withheld materials."). As you know, agencies are also required under FOIA to release "any reasonably segregable portions" of documents that may be partially exempt and to then prepare "an index relating any withheld portions to specific FOIA exemptions." *Lykins v. U.S. Dept. of Justice*, 725 F.2d 1455, 1466 (D.C. Cir. 1984).

Where possible, please provide responsive material in electronic format by email at Sam_Simon@judiciary-dem.senate.gov. Please send any responsive material being sent by mail to Richard Blumenthal, 706 Hart Senate Office Building, Washington, D.C. 20510.

**Request for Expedited Processing**

Given the recent announcement regarding Mr. Kavanaugh's nomination to the Supreme Court, we request expedited processing of this request pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(*I*) and 28 C.F.R. § 16.5(e)(1)(iv). In support of this request, we certify that, to the best of our knowledge and belief, it is true and correct that the records requested are required to address exceptional media interest involving possible questions about the government's integrity that affect public confidence.

As you know, the Senate is in the process of examining Mr. Kavanaugh's record as part of its constitutional duty to provide advice and consent on his nomination. The media has been covering the nomination process with vigor and concern over remarks made by the nominee of questionable veracity,[1] criticism that he is a "highly conservative, partisan lawyer,"[2] the fact that

---

[1] Aaron Blake, *Brett Kavanaugh's First Claim as a Supreme Court Nominee Was Bizarre*, THE WASHINGTON POST, July 10, 2018, https://www.washingtonpost.com/news/the-fix/wp/2018/07/10/brett-kavanaughs-first-claim-as-a-supreme-court-nominee-was-bizarre/?utm_term=.6c3e9e8d4b5c.

[2] David G. Savage, *Brett Kavanaugh, a Washington Veteran, is Trump's Second Pick for the Supreme Court*, L.A. TIMES, July 9, 2018, http://www.latimes.com/politics/la-na-pol-brett-kavanaugh-supreme-court-20180709-story.html.

he was 'pre-vetted' by the Federalist Society, an extreme right-wing organization,[3] and the troubling trail of dark money spenders supporting his nomination.[4] Mr. Kavanaugh spent five years as a high-ranking official in the George W. Bush Administration and media outlets from around the country have expressed widespread and exceptional interest in the records pertaining to his time there, as the public is rightfully concerned about the professional background of a nominee for a lifetime appointment on the nation's highest court.[5] Various media outlets have also expressed particular concern about what role Mr. Kavanaugh played in the Bush Administration's policies surrounding torture and detention as well as his misleading responses to Sen. Durbin's and Sen. Leahy's questions on that very topic during his confirmation to the D.C. Circuit.[6]

The consideration of a nominee to a lifetime appointment on the Supreme Court without the ability to fully assess his professional background, his honesty, and the extent of his involvement in the development of a torture policy directly implicates the public's confidence in government and the integrity of the White House, the Senate, and the Supreme Court. This widespread media interest highlights the threats to public confidence in government posed by a confirmation process conducted in the dark. This request is therefore entitled to expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv).

We expect a decision regarding our request for expedited processing within 10 *calendar* days, as required by 28 C.F.R. § 16.5(e)(4).

**Request for Fee Waiver**

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k)(1) we request a waiver of all fees associated with processing this records request. Disclosure of the records we request is in the public interest because, for the reasons stated above, they are likely to contribute significantly to public understanding of government operations and activities surrounding both

---

[3] Brian Dickerson, *Why Trump Outsourced his Biggest Decision*, DETROIT FREE PRESS, July 14, 2018, https://www.freep.com/story/opinion/columnists/brian-dickerson/2018/07/14/why-trump-outsourced-his-supreme-court-pick/782732002/.
[4] *In Supreme Court Battle, Secret Money Threatens Justice*, USA TODAY, July 23, 2018, https://www.usatoday.com/story/opinion/2018/07/23/supreme-court-battle-secret-money-threatens-justice-editorials-debates/799481002/; *see also*, Lydia Wheeler, *Kavanaugh Paper Chase Heats Up*, THE HILL, July 14, 2018, http://thehill.com/regulation/court-battles/396961-kavanaugh-paper-chase-heats-up (discussing the problems posed by Mr. Kavanaugh's "unusually lengthy paper trail"); Lisa Mascaro, *The Problem of Kavanaugh's Lengthy Paper Trail*, ASSOCIATED PRESS, July 21, 2018, https://www.apnews.com/fed6b6f0ebdb448b9ee4237c6e6737f4.
[5] Tony Mauro, *Activists Want to See SCOTUS Nominee Brett Kavanaugh's Documents—Now*, THE NATIONAL LAW JOURNAL, July 16, 2018, https://www.freep.com/story/opinion/columnists/brian-dickerson/2018/07/14/why-trump-outsourced-his-supreme-court-pick/782732002/.
[6] *See, e.g.*, Amy Davidson Sorkin, *What Brett Kavanaugh Must be Asked About Torture, Guantanamo, and Mass Surveillance*, The New Yorker, July 24, 2018, https://www.newyorker.com/news/daily-comment/what-brett-kavanaugh-must-be-asked-about-torture-guantanamo-and-mass-surveillance; Michael Kranish, *Kavanaugh's Role in Bush-era Torture Debate Now an Issue in his Supreme Court nomination*, Chicago Tribune, July 18, 2018, http://www.chicagotribune.com/news/nationworld/politics/ct-brett-kavanaugh-supreme-court-bush-torture-20180718-story.html; Alex Seitz-Wald, *Kavanaugh Documents Could Answer Decade-Old Question of Whether He Misled Congress*, NBC News, July 16, 2018, https://www.nbcnews.com/politics/supreme-court/kavanaugh-documents-could-answer-decade-old-question-whether-he-misled-n891436.

Mr. Kavanaugh's role in the Bush Administration and more broadly in the process of Mr. Kavanaugh's confirmation hearings.

Disclosure of these records is in no way associated with any commercial interest of ours. Rather, we are requesting these documents to fulfill our constitutional duties as Senators, which require us to have a full and complete understanding of Mr. Kavanaugh's record, including his prior time in government. We are therefore entitled to a fee waiver.

**Conclusion**

We look forward to working with the Office of Legal Counsel to ensure the timely and exhaustive disclosure of all non-exempt records responsive to this request. If you have any questions about this request, please contact Sam Simon at Sam_Simon@judiciary-dem.senate.gov. If our request for a fee waiver is denied in part or in full, please contact us immediately upon making such a determination.

Sincerely,

RICHARD BLUMENTHAL
United States Senate

DIANNE FEINSTEIN
United States Senate

PATRICK LEAHY
United States Senate

RICHARD J. DURBIN
United States Senate

SHELDON WHITEHOUSE
United States Senate

AMY KLOBUCHAR
United States Senate

CHRISTOPHER A. COONS
United States Senate

MAZIE K. HIRONO
United States Senate

CORY A. BOOKER
United States Senate

KAMALA D. HARRIS
United States Senate

# Exhibit B



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

August 17, 2018

United States Senate          Re:      CRM 300678252 (Criminal Division)
Washington, D.C. 20510                  FY18-178 (Office of Legal Counsel)
Via email:                                   FOIA/PA #18-275(National Security
Sam_Simon@judiciary.senate.gov         Division)

Dear Senators Blumenthal, Feinstein, Leahy, Durbin, Whitehouse, Klobuchar, Coons, Hirono, Booker, and Harris:

This is to acknowledge your Freedom of Information Act (FOIA) requests dated August 8, 2018, and received the same day by the Department's Office of Legal Counsel, Criminal Division, and National Security Division, in which you requested a wide range of records concerning Judge Brett Kavanaugh from January 2001 to May 2006.  This response is made on behalf of those three components.

You have requested expedited processing of your requests.  The Department has previously granted expedited processing in response to another request for records on Judge Kavanaugh, and therefore, we will afford such treatment for these requests as well.  We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for these requests.

Although your requests have been granted expedited processing, the records you seek will involve the need to search for and examine voluminous records, the need to search in offices that are separate from the offices processing your requests, and the need to conduct consultations with other offices.  See 28 C.F.R. § 16.4(c)(1) (2018).  Accordingly, your requests fall within "unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2012 & Supp. V 2017).  Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.

In an effort to speed up our process, you may wish to narrow the scope of your requests to limit the number of potentially responsive records.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your requests, you may contact me by telephone at the above number or via e-mail.  The FOIA also requires me to inform you that you may contact our FOIA Public Liaison or the Office of Government Information Services at the National Archives and Records Administration.

-2-

　　　　While your requests are in our expedited processing tracks, the time needed to process them will necessarily depend on the complexity of the records searches and on the volume and complexity of the records located.  I will be happy to discuss these requests with you so that we can prioritize the records you are seeking and find the most efficient way forward.


Sincerely,

Melanie Ann Pustay
Director

# Government's
# Exhibit 3

| | |
|---|---|
| **From:** | Talebian, Bobak (OIP) |
| **To:** | Simon, Sam (Judiciary-Dem); Pustay, Melanie A (OIP) |
| **Cc:** | Hankey, Mary Blanche (OLA) |
| **Subject:** | RE: FOIA Prioritization |
| **Date:** | Monday, August 27, 2018 1:34:00 PM |

Mr. Simon,

Thank you, we will pass this on to all the components so that they may use it as they prioritize their processing efforts.  We will be in touch if we have any questions or need additional information regarding your prioritization.

Best,

Bobby

From: Simon, Sam (Judiciary-Dem) <Sam_Simon@judiciary-dem.senate.gov>
Sent: Monday, August 27, 2018 9:11 AM
To: Talebian, Bobak (OIP) <btalebian@jmd.usdoj.gov>; Pustay, Melanie A (OIP) <mpustay@jmd.usdoj.gov>
Cc: Hankey, Mary Blanche (OLA) <mhankey@jmd.usdoj.gov>
Subject: FOIA Prioritization

Dear Director Pustay (and Mr. Bobak),

Thank you for discussing our document requests last Friday.

As discussed, I am enclosing a list of priority custodians to streamline and accelerate our requests for documents. We selected these individuals based on our research; however, if DOJ is or becomes aware that we omitted individuals who corresponded with Judge Kavanaugh in significant volume or substance, we expect you to inform us expeditiously. We request copies of any communications, or documents reflecting communications, between these individuals and Judge Kavanaugh. If we identify any other items or individuals to prioritize, we will send that information to you as soon as possible to expedite matters.

Our goal is to receive documents as quickly as possible to enable the Senate to fulfill its constitutional responsibility to vet Judge Kavanaugh. Accordingly, should the volume or substance of the material we have prioritized prove to be an obstacle, we stand ready to work with you to facilitate a prompt resolution.

As you replied to our FOIA requests on behalf of all DOJ components, I assume we do not need to separately convey this information to individual DOJ components, but please correct me if I am wrong.

I am copying Mary Blanche Hankey on this message to ensure the DOJ OLA has the benefit of our proposed prioritization.  Mary Blanche, if, in addition to debriefing with your FOIA colleagues and reviewing the attached document, it would be helpful to discuss our prioritization directly with you, please let me know and we will arrange a time to speak.

Many thanks,

Sam


Sam Simon

Chief Counsel

Senator Richard Blumenthal, Ranking Member

Subcommittee on Oversight, Agency Action, Federal Rights, and Federal Courts

Senate Judiciary Committee

Government's

Exhibit 4

ORRIN G. HATCH, UTAH
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JEFF FLAKE, ARIZONA
MIKE CRAPO, IDAHO
THOM TILLIS, NORTH CAROLINA
JOHN KENNEDY, LOUISIANA

DIANNE FEINSTEIN, CALIFORNIA
PATRICK J. LEAHY, VERMONT
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII
CORY A. BOOKER, NEW JERSEY
KAMALA D. HARRIS, CALIFORNIA

KOLAN L. DAVIS, *Chief Counsel and Staff Director*
JENNIFER DUCK, *Democratic Chief Counsel and Staff Director*

**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510-6275

July 27, 2018

The Honorable Patrick X. Mordente, Brigadier General
Director
George W. Bush Presidential Library and Museum
2943 SMU Boulevard
Dallas, Texas 75205

Dear General Mordente:

Pursuant to 44 U.S.C. § 2205(2)(C), I ask that you provide Presidential records to the United States Senate Committee on the Judiciary in connection with the President's nomination of Judge Brett M. Kavanaugh to serve as an Associate Justice on the Supreme Court of the United States. Consistent with the Presidential Records Act (PRA), 44 U.S.C. § 2201(2), (3), this request is for access to Presidential records only, not personal records.

Kavanaugh served in the White House under President George W. Bush, first as Associate Counsel from 2001 to 2003 and later as Senior Associate Counsel in 2003. He served as Assistant to the President and Staff Secretary from 2003 to 2006. I request that you provide the following documents to the Committee on an expedited basis, consistent with the guidelines described in this letter:

(1)     Emails sent to or received from Kavanaugh, including emails on which he was a carbon copy or blind carbon copy recipient, during the period Kavanaugh served as Associate Counsel and Senior Associate Counsel to the President, including any documents attached to such emails;

(2)     The textual records contained in Kavanaugh's office files from the period during which he served as Associate Counsel and Senior Associate Counsel to the President; and

(3)     Documents relating to Kavanaugh's nomination to the U.S. Court of Appeals for the District of Columbia Circuit

The Committee has previously made official requests of Presidential Libraries in connection with nominees who served in the White House. I believe it appropriate to follow past Committee precedent concerning requests for records from Presidential Libraries in several respects.

1

Section 2205 of the Presidential Records Act (PRA), 44 U.S.C. § 2205, provides this Committee access to Presidential records in response to an official Congressional Committee request, notwithstanding the limitations on public disclosure set forth in section 2204 of the PRA, 44 U.S.C. § 2204(a)(1)–(6). Such access is, by statute, subject to "any rights, defenses, or privileges which the United States or any agency or person may invoke." 44 U.S.C. § 2205(2). While I hope that documents responsive to our request will not raise these concerns, I also recognize that responsive documents may be subject to statutory or other rights, defenses, or privileges.

Section 2205(2)(C) entitles the Committee to access any non-privileged Presidential record that is responsive to the Committee's special-access request, notwithstanding the limitations on public access set forth in section 2204. I recognize, however, that in the context of prior Supreme Court nominations, the Committee and the Archivist have agreed that some documents containing PRA-restricted material would be produced to the Committee on a "Committee Confidential" basis. The Committee further agreed that such documents could be discussed only during a Closed Session of the Committee. I also acknowledge that the Committee previously has agreed that the Archivist could withhold certain PRA-restricted material in its entirety. In these respects, I intend to adhere to established custom and accept certain PRA-restricted material on a Committee Confidential basis and to permit the Archivist to withhold some PRA-restricted material in its entirety.

I ask that with each production, you similarly abide by established custom and (1) identify the total number of documents produced, (2) identify the number of documents containing PRA-restricted material that the Committee agreed to treat as "Committee Confidential," and (3) identify the number of documents being withheld entirely pursuant to assertions of constitutional privilege or pursuant to the Committee's agreement not to receive certain PRA-restricted material. I further ask that you produce documents on a rolling basis as you identify documents responsive to our request.

I note that in connection with Justice Gorsuch's nomination, the Bush Library attempted to withhold as little as possible and provided portions of documents, rather than withholding entire documents, where possible. I hope you will adopt the same approach. As the Committee has done in the past while considering Supreme Court nominations, I intend to respect the invocation of privilege by a co-equal branch of our government. For the documents requested by this letter, I further intend to abide by the Committee practice of declining to receive materials reflecting classified national security information or personal privacy information.

Please begin the rolling production to the Committee of records responsive to this request no later than August 1, 2018, at 6:00 PM EDT. Please complete the rolling production to the Committee of all remaining records responsive to this request no later than August 15, 2018 at 6:00 PM EDT.

I recognize that reviewing the archives and producing these documents is a significant task. I thank you in advance for your cooperation and efforts.

Sincerely,

Chuck Grassley
Chairman

cc:

Mr. Donald F. McGahn
Counsel to the President
The White House
1600 Pennsylvania Avenue, NW
Washington, DC 20500

The Honorable David S. Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Avenue, NW
Washington, DC 20408

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
Washington, DC 20510

## **Guidelines**

a) This request is continuing in character. If additional documents responsive to this request come to your attention following your initial production, please provide such documents to the Committee promptly.

b) As used herein, "document" means the original (or an additional copy when an original is not available), all attached documents, and each distribution copy whether inscribed by hand or by electronic or other means. This request seeks production of all documents described, including all drafts and distribution copies, and contemplates production of responsive documents in their entirety, without abbreviation or expurgation.

c) In the event that any requested document has been destroyed, discarded, or otherwise disposed of, please identify the document as completely as possible, including the date, author(s), addressee(s), recipient(s), title, and subject matter, and the reason for disposal of the document and the identity of all persons who authorized disposal of the document.

# Government's Exhibit 5

CHARLES E. GRASSLEY, IOWA, CHAIRMAN

ORRIN G. HATCH, UTAH
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JEFF FLAKE, ARIZONA
MIKE CRAPO, IDAHO
THOM TILLIS, NORTH CAROLINA
JOHN KENNEDY, LOUISIANA

DIANNE FEINSTEIN, CALIFORNIA
PATRICK J. LEAHY, VERMONT
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII
CORY A. BOOKER, NEW JERSEY
KAMALA D. HARRIS, CALIFORNIA

KOLAN L. DAVIS, *Chief Counsel and Staff Director*
JENNIFER DUCK, *Democratic Chief Counsel and Staff Director*



**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510–6275

October 9, 2018

**DELIVERED VIA EMAIL**

Mr. Gary M. Stern
General Counsel
National Archives and Records Administration
8601 Adelphi Road, Suite 3110
College Park, MD 20740-6001
garym.stern@nara.gov

Dear Mr. Stern:

I write with regard to this Committee's request pursuant to 44 U.S.C. § 2205(2)(C) for special access to certain Presidential records from Justice Brett M. Kavanaugh's service in the White House from 2001 to 2003. I submitted that request to NARA on July 27, 2018. I now withdraw that request.

As you know, the Committee received and reviewed every document I requested. From the Office of President George W. Bush we received every non-duplicative Presidential record from Judge Kavanaugh's service in the White House Counsel's Office except for those traditionally subject to constitutional privilege. To ensure that no Presidential records were wrongly withheld as personal records under 44 U.S.C. § 2201(3), I twice asked NARA to prioritize its response to my special-access request by reviewing documents that President Bush withheld from the Committee as personal records. NARA reviewed those documents and President Bush produced every non-privileged document that NARA determined was a Presidential record.

From the Archives the Committee received documents pertaining to Justice Kavanaugh's nomination to the D.C. Circuit. This dual-track process ensured that the Committee timely received every document necessary to advise the President on his nomination of Justice Kavanaugh.

The Senate confirmed Justice Kavanaugh on October 6, and he was sworn in as the 114th Justice of the Supreme Court on the same day. Because the Committee has received all the documents I requested, and because Justice Kavanaugh has been confirmed, I do not believe it makes sense for NARA to continue devoting resources to responding to the rest of my special-access request. Any

1

documents we would subsequently receive from NARA would be duplicates of the documents we already received from President Bush.  Further response to my special-access request therefore would be little more than a distraction from NARA's important work.  I therefore withdraw that request.

My colleagues on the Committee and I are grateful for the hard work that you and the archival staff performed in the course of Justice Kavanaugh's nomination.

Sincerely,

Chuck Grassley
Chairman

cc:

Mr. Donald F. McGahn
Counsel to the President
The White House
1600 Pennsylvania Avenue NW
Washington, D.C. 20500

The Honorable Dianne Feinstein
Ranking Member, U.S. Senate Committee on the Judiciary
331 Hart Senate Office Building
Washington, D.C. 20510