**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| RICHARD BLUMENTHAL, *et al.*, |
| *Plaintiffs*, |
| v. |
| U.S. NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, *et al.*, |
| *Defendants*. |

Case No. 18-cv-2143 (RDM)

## JOINT STATUS REPORT

Pursuant to the Court's June 24, 2019 Minute Order, counsel for the parties, having conferred, jointly notify the Court of the status of this matter. The parties have reached agreement with respect to a joint proposal for further proceedings as to Plaintiffs' FOIA requests to the National Archives and Records Administration (NARA), the Central Intelligence Agency (CIA), and the Department of Justice's Criminal Division. With respect to Department of Justice's Office of Legal Counsel (OLC), the parties were unable to reach an agreement, and therefore offer their separate proposals below.

### National Archives and Records Administration (NARA)

1.    NARA has completed processing of several "priority tiers" of potentially responsive records identified by Plaintiffs. NARA has publicly released many documents in response to Plaintiffs' FOIA requests, after the consultation period required by the Presidential Records Act ("PRA") ran its course without the assertion of any constitutionally based privilege by the current or former President.

2.      Pursuant to an agreement between the parties that was first described in the parties' June 20, 2019 Joint Status Report (ECF No. 32), NARA has agreed to continue to process 250 emails per month (at least until the end of calendar year 2019), to continue to issue public notices on a rolling basis on the timing set forth in the Presidential Records Act, and to promptly release non-exempt and non-restricted material for which the PRA consultation period has concluded.

3.      The parties agree that the existing processing schedule with respect to NARA should remain in effect at this time.

**Central Intelligence Agency (CIA)**

4.      On March 1, 2019, CIA made its final response to Plaintiffs' FOIA request to CIA (producing some records in redacted form, withholding some records in full, and referring some records to DOJ).

5.      On May 3, 2019, the Justice Management Division ("JMD") of DOJ made an additional production of documents to Plaintiffs that had been referred to JMD by CIA.

6.      Accordingly, it is the CIA's position that it has now completed its response to Plaintiffs' FOIA request.

7.      Plaintiffs continue to review the CIA's production, and the more recent production of referred records from JMD, and have requested certain additional information from the CIA regarding the bases for the records and portions of records it has withheld. The parties are discussing this request.

8.      The parties respectfully request a further opportunity to continue to discuss whether Plaintiffs are satisfied with the CIA's response to their FOIA request, and the nature of further proceedings (if any) with respect to that request.

## **Department of Justice – Criminal Division**

9.     On February 22, 2019, pursuant to the parties' prior scheduling agreement, the Criminal Division completed its processing of Plaintiffs' previously identified "priority tiers" of records.  The Criminal Division withheld some records in full, and also referred other records to other DOJ components—that is, to the Office of Legal Policy ("OLP") and the Office of Legislative Affairs ("OLA")—for a final response to Plaintiffs' requests.

10.     Plaintiffs have now received a final response on behalf of OLP and OLA regarding the referred Criminal Division records (from DOJ's Office of Information Policy (OIP)). Accordingly, it is now the position of Criminal Division that it has fully completed its response to Plaintiffs' FOIA request, including with respect to the referred records.

11.     On June 14, 2019, pursuant to the parties' agreement and as reflected in the parties' April 30, 2019 Joint Status Report (ECF No. 30), the Criminal Division provided Plaintiffs draft *Vaughn* information about the records that the Criminal Division has withheld in full.

12.     Recently, Plaintiffs requested certain additional draft *Vaughn* information, which the Criminal Division intends to provide no later than September 30, 2019.

13.     The parties respectfully request a further opportunity to continue to discuss whether Plaintiffs are satisfied with the Criminal Division's response to their FOIA request, and the nature of further proceedings (if any) with respect to Plaintiffs' FOIA request to the Criminal Division.

## **Department of Justice – Office of Legal Counsel (OLC)**

14.     On February 19, 2019, pursuant to the parties' prior scheduling agreement, OLC provided a letter to Plaintiffs detailing certain search results that Plaintiffs had requested as part of the meet-and-confer process.

15.     On March 18, 2019, pursuant to the parties' prior scheduling agreement, OLC

completed its processing of Plaintiffs' first two "priority tiers" of records, by producing certain documents, making a final determination to withhold certain documents, and by referring certain documents to OIP.

16.     On June 28, 2019, OLC completed processing of Plaintiffs third "priority tier" of records.

17.     As reflected in the parties' June 20, 2019 status report, the parties reached an agreement over the summer regarding the parameters to govern OLC's processing of an additional set of records.  Pursuant to that agreement, OLC agreed to process 250 pages per month, of a particular set of potentially responsive records agreed upon by the parties,[1] for at least two months, with productions to be made on or before July 29 and August 29 of 2019.

18.     OLC met those deadlines, by processing more than 250 pages each month, and by making document productions (and referring documents to other DOJ components and other government agencies) on both July 29, 2019 and August 29, 2019.

19.     The parties recently conferred in an attempt to reach an agreement regarding further processing by OLC.  Unfortunately, the parties were unable to reach an agreement, and therefore offer their separate proposals with respect to further proceedings as to OLC:

Plaintiffs' Position

20.     In the year since Plaintiffs initiated this lawsuit, OLC has processed fewer than 1400 pages of records. Although Plaintiff accepted OLC's interim processing rate of 250 pages per month, as an accommodation to OLC while the parties continued to discuss options for prioritizing and narrowing review, this rate is inadequate for a permanent processing schedule. Indeed, Plaintiffs made explicit to OLC that their agreement for OLC to process 250 pages per

---

[1] The parties have referred to this set of records as the "Tier 4 Direct Participant" records.

month was a temporary measure to afford the parties further opportunity to confer in an effort to reach agreement on a permanent schedule.[2]

21.     Under OLC's proposal, the current set of "Tier 4 Direct Participant" records alone—consisting only of records in which Justice Kavanaugh was a participant and which also included any of seven other participants—will require an additional eighteen months. At that point, several other significant categories of records would still require review.

22.     On September 6, 2019, via counsel, Plaintiffs proposed that OLC complete production of the records the parties have identified as the "Direct Participant" records (Tiers 4-6) records by the end of 2019. On September 11, 2019, counsel for OLC conveyed that the total number of pages for the Tier 4 Direct Participant Records is approximately 5300, of which only 600 pages have been reviewed, and OLC has not provided page counts for Tiers 5 and 6 of the Direct Participant Records. Although Plaintiffs believe that it would be possible for OLC to complete review of this set this calendar year, they proposed as an accommodation that OLC commit to reviewing 500 pages of Direct Participant records per month.[3] This revised proposal

---

[2] While Plaintiffs appreciate the OLC's efforts to work with Plaintiffs to prioritize its processing, it does not believe there is anything extraordinary about OLC's production of approximately 1,300 pages of records in the thirteen months since the Plaintiffs' request was submitted.

[3] In response to OLC's concerns that the records in question will likely require "extensive consultation amongst other components of the Executive Branch," *infra* ¶ 28, Plaintiffs have conveyed to OLC their understanding of the process, and have suggested their willingness to consider OLC's monthly obligations met by its own review of 500 pages followed by either release of non-exempt records or portions thereof, *or* by initiation of the consultation process (absent unreasonable delays by Executive Branch components involved in the process). In other words, the need for consultation with other components in no way hinders OLC's ability to conduct its own review of potentially responsive records at the rate Plaintiffs have proposed. Moreover, while OLC asserts the "complexity" of processing these requests in light of the fact that they involve communications with the White House, *infra* ¶ 29, OLC overlooks the fact that these records are quite old and any foreseeable harm from releasing any deliberative materials contained in them has largely dissipated with the passage of time.

would afford OLC five additional months simply to complete review of the Tier 4 Direct Participant set of records, with additional time for the remaining Direct Participant records. OLC declined this proposed accommodation.[4] Setting such a routine production schedule is not, as OLC suggests, somehow improperly asking the Court to "micro-manage" OLC's processing. Courts routinely establish appropriate production rates in FOIA cases, including setting rates higher than Plaintiffs request here.

23.     OLC has not identified a valid reason that review of the current set of records—let alone the other potentially responsive records at issue—should extend eighteen additional months. Although the records to date have been produced with redactions, nothing in the records produced to date indicates that the primary review involved here is particularly complex or time-consuming. In fact, there appear to be a number of duplicative or partially duplicative records, which in particular should not be burdensome for OLC to process.[5]

24.     OLC has cited a mismatch between the demand placed on its FOIA processing capacity and the resources the Department of Justice (DOJ) has dedicated to that FOIA processing capacity. But DOJ's failure to commit adequate resources to FOIA compliance is not a valid reason to lower the standard for OLC relative to other federal agencies. OLC's reference to the demands of other FOIA requesters and non-FOIA responsibilities is a red herring. *See infra* ¶¶ 27, 30, 33. The fact that DOJ has not properly allocated resources for OLC to appropriately address *other* responsibilities does not in any way lessen OLC's statutory obligations to Plaintiffs.[6]

---

[4] It is curious that OLC attempts to dismiss this dispute as merely relating to "a few hundred extra pages per month," when it, too, is disputing those few hundred pages, and when it is well aware that those few hundred pages quickly add up to months and years of delay.

[5] Plaintiffs are, of course, amenable to further de-duplication of the review sets if OLC has capacity to do so.

[6] Plaintiffs also note that number of FOIA requests submitted to OLC in recent years (284 in FY 2017, 209 in FY 2018, and over 200 so far in FY 2019), as described in the attached Second

25.     OLC's reference to the large volume of potentially responsive records for review, *see infra* ¶ 30, is also a red herring.[7] As an initial matter, Plaintiffs' proposal to OLC is to process at least 500 pages per month—a commitment that does not turn on how many records ultimately must be processed in total. Moreover, Plaintiffs have repeatedly expressed their commitment to identify opportunities to narrow or possibly eliminate categories of records for review, so the possibility remains the parties will be able to reach an accommodation in which OLC processes less than the full set of records potentially responsive to Plaintiffs' request. As alluded to in prior Joint Status Reports, Plaintiff has attempted to work with OLC to agree to an efficient approach to processing, including breaking down the universe of records into tiers and categories of most interest to Plaintiffs. Plaintiff believes that starting with review of the most relevant records could shed light on the universe of remaining potentially responsive records in a manner that would allow the parties to narrow or possibly eliminate categories of records for review. Based upon review of productions to date, Plaintiffs have conveyed to OLC that image files may be excluded from the review in the first instance (as long as individual image files will be reviewed upon request). The limited sample of records Plaintiffs have received to date has not revealed additional feasible options for limiting the set of documents requiring OLC's review. At this time, Plaintiffs' priority is on obtaining a reasonable timeline for processing of the highest priority records among the full set of remaining potentially responsive records, but Plaintiffs remain committed to further

---

Declaration of Paul Colburn ¶ 7, demonstrates that OLC's FOIA burden is foreseeable, and DOJ's failure to allocate sufficient resources to address that burden is unreasonable. Notably, OLC's declaration does not indicate any additional resources DOJ has devoted to meet OLC's predictable FOIA burden, and DOJ's failure to allocate sufficient resources to meet its legal obligations under FOIA does not excuse it from FOIA's requirement of prompt production of responsive records.

[7] As is OLC's reference to Plaintiffs' requests to NARA in this action, *id.*, the processing of which have nothing to do with the processing of the requests to OLC, though Plaintiffs note that NARA has been processing Plaintiffs' requests without the issues cited by OLC.

discussions regarding narrowing, prioritization, and scheduling for the remaining sets of records in the future. Though Plaintiffs have conveyed this commitment clearly to OLC on multiple occasions, and OLC has not made a concrete narrowing proposal with regard to the Direct Participant Records, OLC now misleadingly suggests to the Court that Plaintiffs have "largely refused" their "to adopt any significant limitations on the breadth of their request" and that Plaintiff's position in this Joint Status Report confirms that refusal. *See infra* ¶ 32.

26.     Defendants in FOIA cases routinely process at least 500 pages per month, either by agreement or by order, and Plaintiffs respectfully request that the Court order OLC to do so here, with respect to the Direct Participant Records.[8] Upon completion of production for the Direct Participant Records, Plaintiffs propose that the parties will meet and confer to discuss review of the remaining records, including any proposals from OLC.

The Government's Position

27.     As explained in detail in the Second Declaration of Paul P. Colborn (attached to this filing as Government's Exhibit 1), the Office of Legal Counsel continues to devote significant resources to Plaintiffs' FOIA requests specifically (having successfully completed processing of the first three "Priority Tiers" requested by Plaintiffs, on a timeline agreed upon between the parties); as well as to processing an ever-growing number FOIA requests, generally. Despite the crushing burden faced by a very small FOIA staff at OLC in processing an increasing volume of

---

[8] See, e.g., Joint Status Report, *Am. Oversight v. U.S. Dep't of Treasury*, No. 17-2078 (D.D.C., Dec. 14, 2017), ECF No. 9; Joint Status Report, *Equity Forward v. U.S. Dep't of Health & Human Serv.*, No. 18-241 (D.D.C., Apr. 12, 2018), ECF No. 9; Order, *Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 18-1464 (D.D.C. December 17, 2018), ECF. No. 18; Joint Status Report, *Am. Oversight v. Fed. Emergency Mgmt. Agency*, No. 18-2470 (D.D.C. Dec. 18, 2018), ECF No. 9; Joint Status Report, *Am. Oversight v. U.S. Dep't of Justice*, No. 19-26 (D.D.C. Mar. 20, 2019), ECF No. 7.

FOIA requests—many of which are from requesters, just like these, who believe that the records that they have requested are of paramount importance—Plaintiffs now seek this Court's intervention to micro-manage the speed by which OLC processes *their* requests, over a dispute about a few hundred extra pages per month.  Plaintiffs make that request of this Court without regard to a factor that OLC does not have the luxury to ignore: the effect that such an order would have on OLC's ability to meet its many other FOIA and non-FOIA responsibilities.  Plaintiffs' request should be rejected, and OLC should be permitted to continue to process records at a pace of 250 pages per month—a pace agreed upon by Plaintiffs (at least with respect to July and August of 2019) just a few months ago.

28.     As explained in the Colborn Declaration, "OLC has been working diligently to respond to Plaintiffs' FOIA request as soon as practicable."  Colborn Decl. ¶ 18.  After significant back and forth between the parties about identifying appropriate custodians (and more than a month of progress lost to a disruptive lapse in appropriations), OLC has now processed more than 1,300 pages of records in this case.  Colborn Decl. ¶ 20.

29.     That bare statistic, however, does not provide the full story as to the significant burden faced by OLC in processing this particular set of records requested by Plaintiffs.  Plaintiffs have requested what are, for obvious reasons, a particularly complex set of records: those involving OLC's communications with Brett Kavanaugh during his time as a senior White House official.  By their nature, communications between OLC and attorneys from the White House Counsel's Office (or with the White House Staff Secretary) are virtually certain to touch on matters subject

to a variety of privileges, and to require extensive consultation amongst other components of the Executive Branch (including the White House).  *See* Colborn Decl. ¶ 22.[9]

30.     As a matter of basic fairness and orderly process, it would also be inappropriate to compel OLC, by court order, to deprioritize the requests of other less-litigious requesters, who may not have the resources or the litigation experience to force their requests to the top of the FOIA queue (let alone to the top of the litigation queue) by refusing to accept that OLC has no practical choice but to spread its limited FOIA resources across a large and growing number of requests (both in and out of litigation).  *See* Colborn Decl. ¶ 11.

31.     Plaintiffs point out, correctly, that under OLC's proposal—that is, allowing the status quo to continue, in which OLC will continue to process records at a rate of 250 pages per month—it will likely take more than a year-and-a-half to complete processing of the (approximately[10]) 4,600 remaining pages of records that are currently at issue.  But OLC cannot be faulted for Plaintiffs having submitted broad requests that resulted in the identification of thousands of pages of potentially responsive records.  (Plaintiffs' requests to NARA in this case, for example, call for the processing of literally *millions* of pages of White House records, which NARA has estimated will take several *decades* to complete, assuming that Plaintiffs insist that NARA process all of them.)

---

[9] Plaintiffs assert that "nothing in the records produced to date indicates that the primary review involved here is particularly complex or time-consuming."  *Supra*, Plaintiffs' Statement ¶ 23.  Respectfully, Plaintiffs have no visibility into the internal Executive Branch processes that are required before public release of communications between White House lawyers and the Office of Legal Counsel may be authorized, especially with respect to those records that also touch on the equities of one or more other government agencies—a frequent occurrence with this particular set of records.  *See* Colborn Decl. ¶ 22.

[10] To be clear, the approximate page counts included in this filing (including those provided by counsel for the Government to counsel for Plaintiffs during the meet-and-confer process, which Plaintiffs have now relayed to the Court in their statement) are preliminary estimates.

32.     Although OLC has repeatedly expressed an interest in finding common ground with Plaintiffs that would result in some meaningful narrowing of these requests, to date, Plaintiffs have largely refused to adopt any significant limitations on the breadth of their request (a position that Plaintiffs have now essentially confirmed in this status report, *see supra*, Plaintiffs' Statement ¶ 25).[11] That is so even after Plaintiffs have now become aware that the vast majority of the records that they have requested are subject to significant redactions (and often withholding in full) because of the applicability of various FOIA exemptions—primarily, various forms of privilege that will inevitably attach to communications between OLC and attorneys at the White House. *See* Colborn Decl. ¶ 22.

33.     Although they do not request a Court order requiring it, Plaintiffs apparently "believe that it would be possible for OLC to complete review of this set [of approximately 4,600 pages of records] this calendar year." *Supra*, Plaintiffs' Statement, ¶ 22. On what Plaintiffs base that belief, they do not say. In any case, OLC has never told Plaintiffs (and does not now argue to this Court) that it would be *impossible* to process records at a rate of 500 pages per month, or at any particular speed—the question is whether meeting Plaintiffs' demands is possible without an inappropriate and inefficient court-ordered reallocation of OLC's limited resources to *this* case, to the detriment of OLC's *other* FOIA and non-FOIA responsibilities. For the reasons explained in the Colborn Declaration, it is not. *See, e.g.*, Colborn Decl. ¶ 17 ("These attempts to bypass the

---

[11] Plaintiffs casually suggest that this straightforward description of the current status of the parties' negotiations is somehow "misleading," *supra*, Plaintiffs' Statement ¶ 25—while confirming its accuracy in the same paragraph. To be clear, the Government does not dispute that Plaintiffs have often claimed that they are *interested* in the possibility of narrowing their request. What they have failed to do is actually narrow it in any meaningful way. In any event, the Court may read Plaintiffs' own statement and draw its own conclusions. *See supra*, Plaintiffs' Statement ¶ 25 ("The limited sample of records Plaintiffs have received to date has not revealed additional feasible options for limiting the set of documents requiring OLC's review.").

ordinary FOIA processing queue by seeking court-ordered production deadlines far in advance of the ordinary course do significant damage to OLC's ability to complete its FOIA processing in a fair and orderly manner.  Every time OLC must reallocate its sparse FOIA resources to defending these cases or attempting to meet a court-ordered production deadline, the result is further delay suffered by all other requesters.").

34.    In sum, "OLC has been processing, and continues to process, Plaintiffs' FOIA request as quickly as practicable under the circumstances, given the nature of the request and OLC's current FOIA burden."  Colborn Decl. ¶ 23.  Plaintiffs' request to upset the status quo and impose additional judicial supervision over OLC's good-faith efforts to manage its substantial FOIA burden as fairly and efficiently as possible should be rejected.

*     *     *

Dated: September 12, 2019            Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/  *Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 200005
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: Stephen.pezzi@usdoj.gov

*Attorneys for Defendants*

*/s/ Elizabeth France*
Elizabeth France, D.C. Bar No. 999851
Austin R. Evers, D.C. Bar No. 1006999

Katherine M. Anthony, MA Bar No. 685150*
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
beth.france@americanoversight.org
austin.evers@americanoversight.org
katherine.anthony@americanoversight.org

*Counsel for Plaintiffs*